JAMES H. BARNEY, PRESIDENT OF THE BALTIMORE
    WAREHOUSE COMPANY *vs.* THE STATE OF MARY-
    LAND.

*Demurrer—Art.* 59, *of the Code, entitled "Mandamus"—Construc-
    tion of Art.* 81, *secs.* 93 *and* 105, *of the Code, in connection
    with the Acts of* 1866, *ch.* 157, 1868, *ch.* 371, 1870, *ch.* 422,
    1872, *ch.* 419—*Payment of State Taxes upon the Capital stock
    of a Corporation enforced by Mandamus.*

Under the practice in this State, a demurrer will lie to an answer to a petition
    for a *mandamus*

The Act of 1868, ch. 371, which re-enacted the provisions of Art. 81, secs. 93
    and 105, of the Code, (*Emory vs. The State*, 41 *Md.*, 38,) also repealed the
    Act of 1866, ch. 157, so far as it conflicted with the latter.

The State taxes upon the capital stock of corporations, are payable directly to
    the State Treasurer, by the proper officer of the corporation, and their pay-
    ment may be enforced by a writ of *mandamus* at the instance of the State.

APPEAL from the Superior Court of Baltimore City.

The facts of the case are sufficiently stated in the
opinion of this Court, and in the following opinion of the
Court below, delivered by Judge DOBBIN :

"This is a petition for a *mandamus* to compel the
respondent to pay to the Treasurer of the State; the State
taxes claimed to be due upon its capital stock for the years
1870 and 1871. To this petition the respondent put in an
answer, to which the State demurred, and objection is
taken to the demurrer as a mode of pleading not conforma-
ble to the law of England, under the Statute of Anne, from
which our Act of Assembly is copied, and thus is at
variance with the proper course of proceeding in Mary-
land.

"To dispose of this objection it is only necessary to refer to the case of *Hardcastle vs. The Maryland and Delaware Railroad Company*, 32 *Md.*, 32, where the same question was distinctly raised, and was supported by the same course of argument pursued in this case. It was there held that English practice under the Statute of Anne was not the practice here, and that under our legislation regulating the procedure in *mandamus*, a demurrer may be filed to an answer.

"Conforming to this view the question is properly raised by the demurrer whether the answer furnishes a sufficient reason in law to exempt the respondent from liability, in the due discharge of his office of President, to pay over to the Treasurer, the State taxes charged upon the stock of his corporation. The ground of resistance to this claim of the State, is, that the 2nd, 93rd and 105th sections of Article 81, of the Code of Public General Laws, have been repealed by the Act of 1866, ch. 157. Is this so? The taxes claimed are created by the Acts of 1868, ch. 371, and 1870, ch. 422, and are directed to be levied upon the assessable property of the State, based upon the assessment of 1866, and to be collected in the manner prescribed by the Code of Public General Laws. We are to enquire then whether stock of the nature of that of this corporation is by force of the Act of 1866, subject to assessment and taxation.

"The answer seems to be found in the first section of the Act, which says that 'all property, real, personal and mixed, of all kinds and descriptions whatever, within this State,' is so subject. This is certainly so, unless, there be something in the subsequent sections of the Act which restrains these general terms. The respondent thinks that such restraint will be found in the fourteenth and fifteenth sections, which relate to foreign stockholders. So to interpret them would be to give an undue force and meaning to these sections. They were obviously intended to provide

for the case of non-resident stockholders, as to whom the general provisions of the law, requiring an assessment in the county in which the owner resided, did not apply. But they do not in any respect repeal or restrain the express provisions of the first section, which embrace *all property*, nor the ninth section, which specifically enumerates, as subject to valuation and taxation, ' bank and other stocks.' If this view be correct, it cannot be doubted that the stock in question comes clearly within the description of property liable to assessment and taxation for county or municipal purposes. Is it not then liable to taxation for State purposes?

" We have already seen that the Acts before referred to as creating these taxes, impose them upon *all* the assessable property in the State, based upon the assessment of 1866. Many of the provisions of the Act of 1866, relate to the necessity of fixing the place of taxation, because taxes are intended to support the local county or municipal government, and each authority is naturally jealous to get its own. But with reference to State taxes no reason exists for a discrimination as to residence in one county or another, or without the limits of the State, of the taxpayer, because the governmental benefits which constitute the consideration of the tax, proceed from one source common to them all ; and that fact is recognized in section 93, which requires that the tax shall be paid by the corporate officer without reference to the residence of the stockholder.

" With reference to the mode of their collection the Acts imposing them are equally specifie. They are to be collected in the mode prescribed in the Code of Public General Laws. The mode applicable to this particular case by the terms of the Code, is a direct payment by the President of this corporation to the Treasurer of the State, and the present application is to enforce that payment.

" In the face of such direct legislation, which clearly contemplates the equal imposition of taxes upon all descrip-

tions of property, for the proper support of government; and in view of the fact that every impairment of that equality by the release of any subject justly entitled to be so burthened, is a wrong to all others made liable to taxation; and bearing in mind that it is the duty of all Courts to give efficiency to just government by any reasonable intendment necessary to its support; I should require to find unanswerable reasons for ruling, as I am now asked to do, that the laws which were passed to enable the State to collect its taxes from corporations equally with other citizens, have been inadvertently repealed by implication.

"As I find no such reasons, I shall order the *mandamus* to issue for the taxes claimed, about the amount of which there seems to be no dispute, the assessment having been made upon Mr. Barney's own return to the Appeal Tax Court, of the number of shares and their value."

The Court thereupon ordered that the rule previously laid upon the respondent requiring him to show cause why a writ of mandamus should not issue, be made absolute, and that the writ of mandamus be issued in conformity with the prayer of the petition.

From this order the respondent appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, BRENT and GRASON, J.

*Charles J. M. Gwinn,* for the appellant.

Under the statute of 9 Anne, ch. 20, a petitioner could not test the sufficiency of a return to a writ of *mandamus* by a demurrer. *High on Extraordinary Remedies,* (*Ed.* 1874,) 351; *Tapping on Mandamus,* 76 *Law Lib.*, (*m. p.,*) 375. No such right is given by Article 59 of our Code. In this particular, Article 59 of the Code has not altered the statute of 9 Anne, ch. 20, which was previously in force in this State.

Barney *vs.* The State.

In England a right has been given to the petitioner to demur to the return by the statute of 6 and 7 Victoria, ch. 67. In the later treatises upon this subject, a demurrer to the return is treated as a practice in force; but it is a practice in force in England under the statute of Victoria, and is only in practice in those States where the provisions of the statute of 6 and 7 Victoria have been re-enacted. The provisions of this statute have never been enacted in this State.

It is true that in the case of *Eichelberger vs. Sifford and Lorentz*, 27 *Md.*, 329, a demurrer to an answer in *mandamus* was not objected to; and that in *Hardcastle vs. Maryland and Delaware Rail Road Company*, 32 *Md.*, 34, it is assumed that demurrers have been adopted and used as the proper and regular mode of presenting to the Courts the insufficiency of the return filed to a petition for a *mandamus*. It cannot, however, be said that this practice, which is only alleged to be supported by the silence of one case, and a supposed professional opinion, was contemporaneous with the statute of 9 Anne, ch. 20, when that statute was in force in Maryland. Nor can it be successfully maintained that there is any proof that the *practice* of demurring to answers in *mandamus* was consistent and uniform under the Acts of 1806, chap. 90, 1828, chap. 78, and 1858, chap. 285, which are the Acts codified in Article 59 of the Code. *Kiersted vs. State*, 1 *G. & J.*, 231; *Hays vs. Richardson*, 1 *G. & J.*, 366.

These statutes, on the contrary, were, in the main, substantial re-enactments of the statute of 9 Anne, ch. 20, changing only the form of the proceeding, and abolishing the alternative mandamus. But, as codified in Article 59 of the Code, the petitioner could, in opposition to the return, pursue no other course than that indicated in 9 Anne, chap. 20. sec. 2.

The plain language of the statute of 9 Anne, ch. 20, expressly re-enacted in our Code, ought necessarily to have

been construed and applied as it was construed and applied by the Courts in England prior to the Revolution (*Const.* 1867, *Dec. of Rights, Art.* 5 ;) and the ruling of the English Courts, prior to the Revolution, ought to have been taken as conclusive upon the question. *Mayor, &c. of Baltimore vs. Williams,* 6 *Md.,* 265 ; *Cathcart, et al. vs. Robinson,* 5 *Peters,* 280 ; *Kirkpatrick, et al. vs. Gibson's Executors,* 2 *Brock,* 391.

Indeed, the rulings of the English Courts were made in obedience to the precise requirements of the statute of 9 Anne, chap. 20. Until the passage of the Act of 6 and 7 Victoria, chap. 67, no other ruling could have been made, unless these Courts had intended, by their judgment, to change the laws. The words of the statute were plain, and nothing was left for construction. *U. S. vs. Fisher,* 2 *Cranch,* 358; 1 *Cond. Rep. U. S.,* 497 ; *Scaggs vs. Baltimore & Wash. R. R. Co.,* 10 *Md.,* 268.

The stock in question was not included in the assessment of 1866, because the corporation itself was not incorporated until 1867, (see *Act of* 1867, *ch.* 268.) While, under the Code, the collector or deputy collector of taxes of the counties and city of Baltimore had, in conjunction with the Appeal Tax Court or County Commissioners, (Article 81, section 7,) the right to add such new created stock to the list of the assessable property of each owner thereof living within their respective jurisdictions, they had no right in the years 1870 and 1871 to render any bill for such taxes to the corporation in which such stock was held, or to require the payment of said taxes by any person, except those persons who were chargeable therewith.

*First.* Because the Code of 1860 omitted to re-enact the 5th section of the Act of 1847, ch. 266, and there was, therefore, no power in this State to value the aggregate capital stock of corporations, chartered by the State from the year 1860 until the passage of the Act of 1872, ch. 90, sec. 149.

*Second.* Because section 93 of Article 81 of the Code, which provided for the collection of State taxes upon the capital stock of corporations from such corporations was not in force as a law from 1860 to 1874; and taxes were paid upon stock in corporations in the manner provided for in that section only by acquiescence in the values and liabilities stated upon the tax-bills, rendered by the comptroller; because the comptroller had no authority whatever to value the stock upon which such taxes were imposed from 1860 until the passage of the Act of 1872, chap. 90; and because section 93 of Article 81, which required the bank officers to pay the State taxes on the aggregate stock of corporations, and which was repealed by the operation of the Act of 1866, ch. 157, secs. 9 and 15, was not re-enacted until the passage of the Act of 1874, chap. 483, section 146.

Then, for the first time in fourteen years, the two sections of the Act of 1847, chap. 266, which were both essential to the assessment and collection of State taxes upon the capital stock of such corporations, if such taxes were intended to be collected from the corporation itself, existed in an effective form.

*John H. Handy,* for the appellee.

This Court has fully sustained the propriety of a demurrer to the answer to a petition for a *mandamus.* *Hardcastle vs. Md. & Del. R. R. Co.,* 32 *Md.,* 32.

The direct question as to whether sections 93 and 105 of Art. 81 of the Code, were in existence in 1870 and 1871, has been fully determined by this Court in the case of *Emory, &c. vs. The State,* 41 *Md.,* 38.

It is contended by the respondent that this tax is not imposed by law on the corporation, but upon the stockholders, and must, therefore, be collected from them directly. This is a *non sequitur.* The Supreme Court of the United States have held, that the tax on corporate

stock does not become a tax on the corporation, because the officers of the corporation are required to pay it. *National Bank vs. Commonwealth*, 9 *Wallace*, 358–9. And this Court has uniformly held the same doctrine. *State vs. Mayhew*, 2 *Gill*, 503 ; *Firemen's Ins. Co. vs. Mayor, &c., of Baltimore*, 23 *Md.*, 312 ; *Emory vs. The State*, 41 *Md.*, 38.

An objection was urged to the mode of assessing the tax. It is the same as that in the case of Emory, and is the universal mode of assessing stock in the city for municipal purposes. The laws give the Appeal Tax Court, with the aid of their assessors, the right, and impose it as a duty that they shall add to the basis of taxation any assessable property found in the jurisdiction. Under the various sections of the Code and Acts of Assembly, the Appeal Tax Court have the power to demand of the officers of the corporations a full report of their stockholders, and to assess the stock so reported. *Code, Art.* 81, *secs.* 11, 14, 15, 17, 23, 24, 25, 26, 27, *and the Act of* 1867, *ch.* 341, *sec.* 3.

In many cases the reports of the officers of corporations are made for the purposes of commutation of the municipal tax charged against their stockholders, and the report being accepted by the Appeal Tax Court for that purpose, as the law allows, and the gross amount paid by the corporation, there ends the transaction between the Tax Court and the corporation and its stockholders. But this commutation is not allowed as to the State tax.

Hence, if the report so made was not to be taken as the assessment, there would be no assessment of the stock for State taxes. It has always been the understanding of the public authorities, and the custom of the Tax office or Treasurer, to treat this report and return, as an assessment, if accepted by the Appeal Tax Court. When the property of the tax-payer has been ascertained, and its value fixed for taxation by the proper authorities, and acted upon by them as the assessment, no mere technical objection will be allowed. For whilst the citizen is enti-

tled to full protection from injustice, he is not entitled to escape his just burdens upon frivolous and unsubstantial grounds.

BOWIE, J., delivered the opinion of the Court.

The appellee, on the 12th of June, 1873, filed its petition in the Superior Court of Baltimore City, alleging that certain taxes, imposed under the Acts of 1868, ch. 371, and 1870, ch. 422, on the capital stocks of corporations chartered by this State, had been levied and assessed by the proper authorities, upon the capital stock of the appellant's company, and that the appellant, as President of said Company, is bound to pay to the Treasurer of the State the said sums, imposed as aforesaid, and has neglected and refused to pay the same, and prayed a mandamus, commanding and enjoining the appellant to pay the same.

To this petition the appellant filed his answer, assigning twelve several grounds of defence.

The first three substantially declare that the provisions of the Code of Public General Laws, requiring the payment of taxes to the Treasurer, were repealed by the Act of 1866, ch. 157.

The 4th is, that the legal effect of the Act of 1868, ch. 371, was to require that the taxes thereby imposed and based on the assessment therein referred to, *"should be collected in the manner prescribed by so much of the Code of Public General Laws as was then in force."*

5th. and 6th. That the Act of 1870, ch. 422, sec. 18, imposed the taxes for the years 1870 and '71, on the stock of the Baltimore Warehouse Company, *in the hands of the stockholders,* and not otherwise.

7th and 8th. That the appellant's Company did not in the years 1870 and 1871 assess the value of its stock, but only gave such information as would suffice for its valid assessment, by those duly authorized to make such assessment.

9th. That the appellant's Company did not arrange with the Appeal Tax Court to fix the value of the stock or to commute the taxation upon it, or to pay the same, for the years 1870, 1871, or either of them, but the tax, if any was assessed, on said stock, in said years, was payable by the holders thereof.

10th and 11th. Are general denials of the liability of appellant's Company to pay the Treasurer of the State for the taxes claimed.

12th. Concludes, that for the causes aforesaid, the writ of mandamus should not issue.

The State demurred to the 1st, 2nd, 3rd, 4th, 5th, 6th, 9th, 10th and 11th defences; and as to the 7th and 8th replied : "That upon the return of the said information, so as aforesaid furnished, the Appeal Tax Court did assess the said shares of capital stock, at the sum in said information fixed, and as charged in said petition, and that the municipal taxes were charged by the proper authorities and collected from the stockholders upon said assessment."

To which replication the appellants demurred. Upon this state of pleadings, the case being argued and submitted, the Court below, without passing any special order sustaining or overruling the demurrer, ordered the rule to show cause why the mandamus should not issue, to be made absolute. From which order this appeal is taken.

The points made in the appellant's brief may be reduced to two. First. That a demurrer does not lie to an answer to a petition for mandamus under the laws and practice of this State.

Secondly. That there is no legal authority in the Treasurer to collect and receive the taxes claimed by the State, and therefore the mandamus should not issue.

The first point is sought to be sustained by reference to a series of English decisions, arising under the statute of 9th Anne, ch. 20, entitled "An Act for rendering the proceedings upon writs of mandamus and informations, etc., more

speedy and effectual, etc." Mr. Alexander, in commenting on this statute, and comparing the provisions of the 59th Art. of the Code, title "Mandamus," with it says: "The answer of the defendant may rely upon matter of fact, and matter of law together, and it is held that the petitioner must take issue or demur to such defences," referring to *Eichelberger vs. Sifford*, 27 *Md.*, 321; "but it will be observed that the language of the Code, like that of the statute of Anne, does not authorize the petitioner to demur to the answer; and in the construction of the statute of Anne it was determined that the prosecutor could not demur to the return." *Alexander's British Statutes*, 696.

Since the decision in *Eichelberger vs. Sifford*, in which the question was not raised, this point has been directly disposed of by this Court, in the case of *Hardcastle vs. The Md. & Del. R. R. Comp'y*, 32 *Md.*, 32, 34, and must therefore be regarded as *res adjudicata*.

In that case this Court recognized the coincidence in the provisions of Art. 59, Tit. Mandamus, Code of Public General Laws with those of the statute of 9 Anne, ch. 20; and conceding that demurrers to the return of the defendant were not allowed in England until the 6th and 7th Vict. expressly authorized them, the Court declared, "this technical rule has not been adopted in our practice." 32 *Md.*, 32, 34.

The second point in the appellant's brief has, in our opinion, been as explicitly decided by the ruling of this Court in the case of *Emory, etc. vs. The State*, 41 *Md.*, 38.

In that case, as in this, it was contended that the payment of the taxes for 1870 and 1871 could not be coerced by mandamus, because, 1st. under the Acts of 1868, ch. 371 and 366, and 1870, ch. 422, s. 18, they were required to be levied by the Mayor and City Council, and to be collected by the local collector, and were not payable directly to the Treasurer—the Act of 1868 having repealed secs. 93 and 105 of the Code; and 2ndly, because by the Act

of 1872, ch. 419, sec. 93, of Art. 81 of the Code was expressly repealed, and the power of the Treasurer to require payment of the taxes, thereby taken away. The Court denied both these propositions, and referring to the language of the Act of 1868, ch. 371, held that it re-enacted the provisions of the Code of Public General Laws, Art. 81, secs. 93 and 105, as they originally stood, not, as insisted by the appellant, in the 4th proposition of his answer, "as was then in force."

It is true, in the case just referred to, the Act of 1866, ch. 157, was not referred to as repealing the Code, as originally enacted; but if the Act of 1868, ch. 371, re-enacts the provisions of the Code, secs. 93 and 105, it follows, of course, all Acts antecedent to it are repealed, including that of 1866.

The principal points of the appellant having been thus covered by preceding decisions of this Court, we think it unnecessary to enter into a more minute consideration of the appellant's elaborate argument, concurring entirely with the clear and forcible views expressed by the learned Judge who decided this case below.

*Order affirmed, and*
*cause remanded.*

(Decided 4th June, 1875.)