Argued April 9, reversed July 1, rehearing denied September 16,
1924.

## O. NELSON *v.* GEORGE BAKER ET AL.

(227 Pac. 301; 228 Pac. 916.)

**Municipal Corporations—In Proceedings Before Civil Service Board
to Review Mayor's Order Removing Policeman Officer had Bur-
den of Proof.**

1. In proceedings under City Charter of Portland, Section 108,
to review order of mayor removing police officer, not to question va-
lidity thereof, discharged officer had burden of proof.

Municipal Corporations—Policeman of Portland may not be Discharged Without Notice and Hearing.

2. Police officer of City of Portland for more than six years cannot be dismissed by mayor without trial or hearing under City Charter, Section 108, in view of Section 316.

Officers—May be discharged, as for Cause, only After Hearing.

3. Where executive officer has only conditional or limited power of removal of officer, as for cause, he may remove an officer only after charges have been made and hearing accorded, though such hearing is not governed by rules applicable to strictly judicial proceedings.

Officers—Question of Regularity of Removal Open to Review in Courts.

4. Question of regularity in proceeding by which removal of a public officer is had is always open to review in courts.

Municipal Corporations—Civil Service Board Held not Authorized to Dismiss Policeman on Appeal from Removal Without Hearing.

5. Under City Charter of Portland, Sections 108, 316, civil service board of city, on appeal to it by an officer removed by mayor, had no jurisdiction to remove him, where he was accorded no hearing by mayor, where he had served as a policeman for more than six years.

Mandamus—Appropriate Remedy, Where Officer Removed by City Officials Without Proper Hearing.

6. *Mandamus* furnishes an appropriate remedy, where police officer is improperly removed by city officials without a hearing to which he is entitled.

ON PETITION FOR REHEARING.

Mandamus—Generally Regarded as in Nature of Action at Law in Which Parties may Plead as in Other Actions.

7. Proceedings in *mandamus* are generally regarded as in the nature of an action at law in which the parties may plead as in other actions, especially in view of Section 620, Or. L.

Mandamus—Court may in Exercise of Discretion Deny Application After Unreasonable Delay.

8. Generally, a court may in its discretion deny an application for *mandamus* made after an unreasonable delay, especially where the rights of respondent or others interested are prejudiced thereby, but the applicant may avoid it by showing a good excuse for delay.

---

3. Right of municipal officer to notice and hearing before removal for cause, see notes in 12 **Ann. Cas.** 995; **Ann. Cas.** 1913D, 1209.

6. *Mandamus* as remedy to restore party to office, see notes in 12 **Ann. Cas.** 14; **Ann. Cas.** 1912A, 930.

See 3 C. J., p. 366; 28 Cyc., pp. 502, 506; 29 Cyc., pp. 1408–1410.

Mandamus—Generally must be Brought, and may be Brought, Within Period for Bringing Civil Action to Enforce the Same Right.

9. As a general rule, an application for *mandamus* must be brought within the period for bringing a civil action or proceeding to enforce the right which is the subject of the writ, and *mandamus* may be instituted at any time within such period.

Equity—Laches Required to be Set Up to Give Complainant Opportunity to Amend.

10. A defendant is required to set up and insist upon complainant's laches, in order to give the latter an opportunity to amend by inserting allegations explaining and excusing delay.

Mandamus—Party Seeking Mandamus Held not Guilty of Laches.

11. Where a police officer, seeking *mandamus* to compel reinstatement, had persisted in asserting his rights ever since his illegal discharge, and never waived or abandoned his claim, he was not guilty of laches defeating an application for *mandamus* within a year after discharge.

From Multnomah: GEORGE G. BINGHAM, Judge.

Department 2.

The appellant, O. Nelson, petitioned for a writ of *mandamus* to compel the respondent, George L. Baker, the mayor of the City of Portland, to reinstate him as patrolman on the police force of the City of Portland, under the classified civil service thereof. The issues were joined upon the amended alternative writ of *mandamus* and the respondent's answer thereto. The cause was tried by the circuit judge and findings of fact and conclusions of law made and filed and a judgment thereon entered dismissing the writ. The plaintiff appeals.                          REVERSED.

For appellant there was a brief over the name of *Messrs. Manning & Harvey,* with an oral argument by *Mr. John Manning.*

112 Or.—6

For respondent there was a brief and oral arguments by *Mr. Frank S. Grant,* City Attorney, and *Mr. Robert A. Imlay,* Deputy City Attorney.

BEAN, J.—There appears to be no dispute whatsoever as to the facts.

The questions presented are practically of legal construction.

It is disclosed by the record that for about 25 years the appellant, Nelson, was a patrolman on the Portland police force; that he resigned from the service in 1911 and went to Europe. On his return he was reappointed and ranked in seniority since February 22, 1912; that on January 31, 1921, while he was in the performance of his duties as a police officer of the City of Portland, and under the civil service thereof, and subject to retirement upon a pension, the respondent caused to be served upon him and six other officers, the following notice of discharge:

"City of Portland, Oregon,
"Department of Public Safety,
"Bureau of Police.

"Chief's Office, January 29, 1921.

"To Officers F. L. Hinds, F. C. Melanson, C. O. Payne, G. A. Rigor, A. F. Watts, A. McFarlane, Ole Nelson—

"You are hereby notified that you are discharged from the Bureau of Police of Portland, for the good of the service. This discharge is made on the ground of incompetency in that your service in said Bureau has been below the standard of efficiency required of each officer therein to maintain the effectiveness of the organization. This order is effective February 1st, 1921.

"Approved: Geo. L. Baker,
"Mayor and Commissioner of Public Safety.
"L. V. Jenkins,
"Chief of Police."

The record also discloses that the above is the only notice of any kind served upon appellant before he was discharged from the police force; that he was discharged without first having a trial or hearing. No written charges were served upon him or made, or filed against him prior to his being dropped from the police force. He was given no opportunity to be heard or the benefit of any trial before the above notice was served informing him of his discharge.

Section 316 of the City of Portland's Charter, as printed in the city attorney's brief, provides thus:

"Sec. 316.—Discharge of Policemen. No member of the Bureau of Police, who has served faithfully and efficiently for six years continuously shall be removed or discharged without first having a trial or hearing, and not then except for cause upon written charges, of which one copy shall have been served upon him and a duplicate filed with the Civil Service Board. Any policemen so removed may within ten days from his removal file with the Civil Service Board a written demand for investigation. The cause of dismissal shall forthwith be investigated by or before the Board or by or before some officer or board appointed by the Civil Service Board to conduct such investigation. The findings of the Civil Service Board or such officer or board when approved by the Civil Service Board, shall be certified to the appointing officer and shall be forthwith enforced by such officer."

Section 108 of the Charter of the City of Portland, relating to removing of employees, coming under the civil service, specifically authorizes the discharge of employees "without any trial or hearing" and provides for an investigation of the discharge by the Civil Service Board with this restriction:

"The investigation shall be confined to the determination of the question of whether such removal or

discharge was or was not for political or religious reasons or was or was not made in good faith for the purpose of improving the public service.''

It seems that the other six officers, named in the notice of discharge, had not served for a period of six years, and their case did not come within the provisions of Section 316 of the Charter. Apparently it passed unnoticed by the mayor and chief of police, at least by the mayor,.that the appellant, Nelson, had been in the service for more than six years, or the mayor assumed that Section 108 of the Charter authorized the discharge of plaintiff without notice and without investigating his record of service.

On February 4, 1921, appellant petitioned the Civil Service Board for reinstatement, stating further that he had been discharged without being informed as to the reason thereof and requesting that he be granted a hearing before the board, apprised of the alleged charges, and given an opportunity of proving any such charges to be untrue. This petition ends with a prayer to ''be reinstated as an officer in said Bureau as heretofore.'' On February 18, 1921, while appellant's appeal to the Civil Service Board was pending, the chief of police addressed a letter to him, which reads as follows:

''You are hereby notified to be present at the hearing of your case in the Mayor's office in the City Hall on February 21st at four o'clock P. M.''

On February 23d appellant, in company with L. E. Crouch, his attorney, went to the mayor's office and .the mayor stated to him:

''You have been called here for hearing on your .discharge. Are you willing to go ahead?''

The attorney stated they wished to waive the hearing in order to avoid calling witnesses before both the

Mayor and the board. On the next day appellant had a hearing before the Civil Service Board. On the twenty-eighth day of February, 1921, the board issued an "order" in which it found:

"That the said order of discharge of O. Nelson * * was not made for religious or political purposes, but was made in good faith for the purpose of improving the public service. Therefore, it is ordered, considered, adjudged, and decreed that said order discharging said O. Nelson from the Bureau of Police be and it is hereby sustained, and the petition for hearing and reinstatement of said O. Nelson be and the same hereby is dismissed."

1. The Civil Service Board appears to have treated the plaintiff's petition as an appeal under Section 108 of the Charter, and its order follows the wording of that section. The proceedings had before the Civil Service Board were supplemental to the discharge of Nelson, and appear to have been under Section 108 of the Charter, for the purpose, on his part, of reversing the order removing him and not to question the validity thereof. Under those proceedings the discharged officer had the burden of proof.

2–4. Any of the discharged officers who had not served for six years could have taken the same course. It did not pertain to proceedings in conformity to Section 316 of the Charter. Such a proceeding had never been instituted.

The powers of removal of an officer by the executive authorities are usually defined by the statutes upon which they depend. The executive power of removal may be either an arbitrary or a conditional one. If the power is an arbitrary one no formalities, such as the presentment of charges, or the granting of a hearing to the person removed, are necessary to its lawful exercise. A conditional or limited power of

removal, as for cause, may, however, be exercised only after charges have been made against, and a hearing accorded to the person to be removed, in order to effect a valid exercise of power. Where charges are required to be made and a hearing given in order to effect their removal, such a hearing is not governed by rules applicable to strictly judicial proceedings: 29 Cyc. 1408, 1409, c. & d. The question of the regularity of the proceedings by which the removal of a public officer is attempted is always open to review in the courts: Mechem's Public Offices, § 456.

In *State* v. *Hoglan,* 64 Ohio St. 532 (60 N. E. 627), the syllabus reads:

"When a public officer may be removed for specified causes, such facts must be stated as in judgment of law, constitute the cause relied on, and an opportunity afforded the officer to be heard, before he can be legally removed."

*Benson* v. *People,* 10 Colo. App. 175 (50 Pac. 212); *Madison* v. *Korbly,* 32 Ind. 74; *People* v. *Therrien,* 80 Mich. 187 (45 N. W. 78); *Dullam* v. *Willson,* 53 Mich. 392 (19 N. W. 112, 51 Am. Rep. 128); *State* v. *St. Louis,* 90 Mo. 19 (1 S. W. 757); *State* v. *Smith,* 35 Neb. 13 (52 N. W. 700, 16 L. R. A. 791); *People* v. *Brooklyn Fire etc. Dept. Commrs.,* 106 N. Y. 64 (12 N. E. 641); *Field* v. *Commonwealth,* 32 Pa. St. 478; *Commonwealth* v. *Slifer,* 25 Pa. St. 23 (64 Am. Dec. 680); *Andrews* v. *King,* 77 Me. 224.

In the case of *Biggs* v. *McBride,* 17 Or. 640 (21 Pac. 878, 5 L. R. A. 115), where the question of the removal of a railroad commissioner arose, Mr. Justice Strahan at page 651 of the report said:

"But it is believed, under either view, and by whomsoever the power of removal for cause may be exercised, it must be done upon notice to the delin-

quent of the particular charges against him, and an opportunity be given him to be heard in his defense."

Limitations upon the power of removal are often contained in civil service rules and laws. The usual limitations contained in such rules and laws are so formulated as to prevent the removal of all officers appointed under them or of honorably discharged soldiers and sailors, without a hearing: 29 Cyc. 1411.

In the case of *Ham* v. *Boston Board of Police,* 142 Mass. 90, at page 93 [7 N. E. 540], it appears that the power of removal, which was vested in the board of police commissioners was expressed in the following language in the Stats. 1878, c. 244, Section 3; "Any of said officers or members of the department may be removed by the board for cause." It was held that the board of police of the city of Boston could not remove an "officer or member of the police, without assigning a cause for such removal, and giving to such officer or member an opportunity to be heard thereon." The power of removal is conferred by legislative authority, either state or municipal.

In *State ex rel. Driffill* v. *City of Anaconda,* 41 Mont. 577, 581 (111 Pac. 345), it appears that a member of a fire department could be removed against his will only under Rev. Codes (Mont., Sec. 3328) providing for the removal of a fireman for cause, but requiring as a condition precedent, charges in writing and a hearing thereon, or under Section 3329, authorizing the reduction in the number of firemen but requiring that the men be chosen for retirement in the inverse order of their appointment. At the time the relator was dismissed six members of the Anaconda Fire Department had served shorter periods of time than the relator. At page 581 it is said:

"In order to dispense with the services of the relator against his will, it was incumbent upon the City

to pursue the mode prescribed by Section 3328 or Section 3329, Rev. Codes. Section 3328 is a disciplinary measure. It provides for the removal of a fireman for cause; but, as a condition precedent to such removal, charges in writing must be preferred to the council, a hearing had, and the accused found guilty. In this instance there never were any charges in writing preferred against the relator. But it is urged that, by petitioning the city council for reinstatement, the relator thereby waived his right to have the charges preferred in writing, and at least tacitly consented that oral charges against him might be heard upon consideration of his petition. At the time relator petitioned the city council for reinstatement, he had already been removed from his position as a member of the department, and, this being true, it would seem that the doctrine of waiver cannot have any application here."

We read in the brief on behalf of the city officers in the present case that:

"at no point in the proceedings to remove the appellant did he object that the charges were not specific enough."

The inapplicability of this statement is apparent for the reason that there were no charges containing specifications to which the plaintiff might object to or challenge. It is said that:

"the overwhelming weight of authority is that whenever a public officer holds for a definite term he is entitled to notice and a hearing in order that he may have an opportunity to defend. * * In a number of jurisdictions notice and hearing prior to the removal of certain public officers are expressly required by statutory or constitutional provisions. In harmony with these principles it has been held that a statute providing for the removal of an officer chosen for a fixed term, which makes no provision for giving him notice, or for allowing him to be heard in his defense, is contrary to a constitutional provision that no per-

son shall be deprived of life, liberty, or property without due process of law." 22 R. C. L. 574, § 286.

*Board of Aldermen* v. *Darrow,* 13 Colo. 460 (22 Pac. 784, 16 Am. St. Rep. 215); *Jacques* v. *Little,* 51 Kan. 300 (33 Pac. 106, 20 L. R. A. 304); *People* v. *Stuart,* 74 Mich. 411 (41 N. W. 1091, 16 Am. St. Rep. 644).

In *State* v. *Mayor etc. of Helena,* 43 Mont. 61 (114 Pac. 777), it was held, as the syllabus reads:

"Under Rev. Codes, § 3236, providing for the removal by a city council of officers on written charges entered on their journal, written charges for the removal of an officer must be filed with the city council, and a proceeding for the removal of an officer has not been instituted until such charges are filed."

Chief Justice MARSHALL is quoted in *Dullam* v. *Willson,* 53 Mich. 392, at 406 (19 N. W. 112, 51 Am. Rep. 128) as follows.

" 'The secretary being removable for breach of good behavior only, the ascertainment of the breach must precede the removal. In other words, the officer must be convicted of misbehavior in office. And we shall not argue to prove that in a government of laws, a conviction whereby an individual may be deprived of valuable rights and interests, and may moreover be seriously affected in his good fame and standing, implies a charge and trial and judgment, with the opportunity of defense and proof': *Page v. Hardin,* 8 B. Mon. (Ky.) 672."

Again, at page 406 the same learned jurist is quoted thus:

"It is a principle of natural justice, which courts are never at liberty to dispense with, unless under the mandate of positive law, that no person shall be condemned unheard, or without an opportunity of being heard."

The Charter of the City of Portland prohibits the removal of a member of the bureau of police who has served faithfully for six years without first having a trial and hearing, and not then except for cause upon written charges, of which one copy shall be served upon him and a duplicate filed with the Civil Service Board. Therefore, until such charges are preferred in writing and served, as provided by the City Charter, no proceedings are instituted for such a removal, and the executive officers of the city have no jurisdiction to act in the matter, or to try or discharge the policemen: Charter of Portland, § 316; *People ex rel.* v. *Hermance, Commissioner,* 134 App. Div. 919 (118 N. Y. Supp. 938); *Reddy* v. *Ossining,* 148 App. Div. 725 (132 N. Y. Supp. 937).

5. Where statutory authority is conferred upon a board, or official, to remove a public officer, the procedure authorized by the statute must be followed: *Van Brakle* v. *State Board of Health,* 74 Or. 367 (114 Pac. 1170). The officials of the City of Portland who attempted to discharge Nelson, being a tribunal of the first instance, not having had jurisdiction of the matter by reason of there being no trial of the plaintiff and no written charges made or filed against him, so that he could have a hearing and defend himself, the Civil Service Board, the appellate tribunal to which the appeal was taken, had no jurisdiction to hear the case or confirm the action of the Mayor and Chief of Police: *Lindbolm* v. *Civil Service Com.,* 102 Ill. App. 14; *Royston's Appeal,* 53 Wis. 612 (11 N. W. 36); *Felt* v. *Felt,* 19 Wis. 208; 3 C. J. 366, § 123.

Sir Edward Code in the opinion in the *James Baggs Case,* Part 11, Coke, 93, said:

"And although they have lawful authority either by charter or prescription to remove any one from

the freedom and they have just cause to remove him; yet it appears by the return, that they have proceeded against him without hearing him answer to what was objected, or that he was not reasonably warned, such removal is void, and shall not bind the party, * * and such removal is against justice and right.''

In the case of *State* v. *City of Duluth,* 53 Minn. 238 (55 N. W. 118, 39 Am. St. Rep. 595), Mr. Justice MITCHELL, speaking for the Supreme Court of Minnesota, held that in proceedings to remove an officer for sufficient cause, general charges without any specification of facts are not sufficient to support an order of removal, as where the officer is charged with ''being incompetent and inefficient,'' and that the sufficiency and reasonableness of the cause for removal are questions for the courts.

It seems that Section 316 of the Charter of the City of Portland is a part of the amendment relating to the Police Pension Fund. Its framers appreciated the necessity of safeguarding the tenure of office of a member of the bureau of police who had served six years, and who was required to contribute to the pension fund. This fund was for the purpose of protecting those officers who became inefficient because of age or disability. Under these circumstances the officer ought not to be dropped from the roll with others who were not veterans in the service under the City Charter, without charges and trial or hearing upon written charges preceding such removal.

It was of little avail to the plaintiff for the municipal authorities to go through the form of sustaining a removal which had never legally taken place after he had received the notice ''You are discharged.'' Plaintiff was entitled, under the law, to a fair notice of what the charges against him were and to a fair hearing upon such charges. His standing differed

from that of the other officers named in the same notice, who could be discharged without written charges or a hearing.

We have naught to do with the wisdom of the charter requirement. It was deemed by the lawmakers to be beneficent. That is a question for them and not for the courts. The mandate of the City Charter, restricting the authority of the municipal executives in the removal of a policeman, is as plain as any commandment and should be obeyed. Oversight is not a legal excuse in such a matter.

The city attorney, on behalf of respondent, cites and relies upon cases where the executive board acted upon charges made and filed, which were sufficient to confer jurisdiction, and not where there was a plain violation of an inhibition contained in the charter, such as the case of *Coles* v. *Portland,* 96 Or. 645 (190 Pac. 720).

6. The plaintiff seems to have acted in good faith and endeavored to correct the error complained of in a somewhat informal way before the Civil Service Board, and when compelled to in order to protect his rights, on the third of next November, brought this proceeding. That the writ of *mandamus* furnishes an appropriate remedy, under the facts and circumstances, as we understand, is not seriously questioned. See note to *State* v. *Dunn,* 12 Am. Dec. 28, and authorities there cited. We in no way question the good intentions of the city officials.

It follows that the judgment of the Circuit Court quashing the writ must be reversed and the writ of *mandamus* allowed as prayed for in plaintiff's petition. It is so ordered.    REVERSED.

MCBRIDE, C. J. and BROWN and RAND, JJ., concur.

Rehearing denied September 16, 1924.

ON PETITION FOR REHEARING.

(228 Pac. 916.)

For the motion, *Mr. Frank S. Grant* and *Mr. R. A. Imlay.*

*Contra, Mr. John Manning.*

BEAN, J.—By a petition for rehearing respondent urges further consideration of the question of laches of the plaintiff in prosecuting this action. Our former opinion is reported in 227 Pac. 301.

The plaintiff was discharged as a police officer under the civil service of the City of Portland on January 31, 1921. He had served as such officer continuously for more than six years. He was discharged without first having a trial or hearing. No written charges were filed against him prior to his discharge so as to give the board of commissioners jurisdiction of the matter. On February 4, 1921, plaintiff filed a formal petition with the Civil Service Board of the city asking to be reinstated. On February 28, 1921, the Civil Service Board issued an order sustaining the action of the Mayor and Chief of Police in discharging Nelson and dismissing the petition for rehearing and reinstatement. On November 3, 1921, plaintiff filed in the Circuit Court a petition for a writ of *mandamus* to compel defendant to reinstate plaintiff in his former position on the police force. The defendant Mayor answered the writ. A reply was filed by plaintiff and the issues were tried. This defendant did not demur to the writ or petition. Neither the sufficiency of the petition or writ was questioned in the trial court, nor the matter of laches

called to the attention of that court or the plaintiff in any manner. This court is requested to review a matter that was not decided by the trial court.

7. Proceedings in *mandamus* are generally regarded as in the nature of an action at law in which the parties may plead as in other actions: High on Extraordinary Legal Remedies (3 ed.), § 459; *Barney* v. *State,* 42 Md. 480; *People* v. *Board,* 26 N. Y. 316.

According to the provision of our statute (Or. L., § 620), the pleadings in the proceeding by *mandamus* " * * are to have the same effect and to be construed, and may be amended in the same manner, as pleadings in an action. Either party may move to strike out, or be allowed to plead over after motion or demurrer allowed or disallowed, and the issues joined shall be tried, and the further proceedings thereon had in like manner and with like effect as in an action."

The statute of Oregon does not contain any limitation applying especially to the time in which *mandamus* may be brought.

8; 9. The general rule is that the court may, in the exercise of its discretion, deny an application for *mandamus* made after an unreasonable delay, especially where the delay has resulted prejudicially to the rights of respondent or others interested. The applicant may of course avoid the effect of this rule by showing a good excuse for the delay. In states where the statutes of limitations do not apply directly to *mandamus* proceedings it is common to apply them by analogy. It is difficult to lay down any fixed rule as to the time when the writ will be barred, it may be said in a general way that it must be brought within the period fixed for that particular form of civil action or proceeding which may be brought to en-

force the right which is the subject of the writ; and on the other hand that *mandamus* may be instituted at any time within such period: 26 Cyc. 393.

The doctrine of laches is an equitable one, therefore, we may look at our equity practice and decisions to determine how and when the question can be raised. In other states it has been held that if laches, not ap-appearing upon the face of the pleading of plaintiff, is not relied upon in the lower court the defense will be considered waived and cannot be urged in the appellate court: *Beach* v. *Shaw,* 57 Ill. 17, 25; *School Trustees* v. *Wright,* 12 Ill. 432; *Walker* v. *Dennison,* 86 Ill. 142; *Dorst* v. *Murphy,* 119 Ill. 343 (9 N. E. 887); *Dawson* v. *Vickery,* 150 Ill. 398 (37 N. E. 910); *Humphreys* v. *Butler,* 51 Ark. 351 (11 S. W. 479).

10. The rule requiring the defendant to set up and insist upon the complainants laches is invoked in order to give the latter an opportunity to amend by inserting allegations explaining and excusing the delay: *Hall* v. *Fullerton,* 69 Ill. 448, 451.

In the present case it is contended by plaintiff that if the respondent had raised the question of laches in the lower court, the plaintiff could and would have amended his pleadings and would have shown that after the Civil Service Board had affirmed the action of respondent in discharging the petitioner without a hearing, Nelson having employed an attorney other than the first, again petitioned the Civil Service Board to purge its records of the order of February 28, 1921, and to reinstate him; that after the matter was argued and an affidavit filed in objection thereto, on September 9, 1921, Olson was notified in the form of a letter by the Civil Service Board of the denial of his petition, and that thereafter the present counsel for plaintiff made an effort to obtain a reconsideration and

failing therein ordered a transcript of the testimony that had been taken before the Civil Service Board, but was informed a few days before this action was commenced that the testimony had not been preserved. Neither the petition nor the writ disclosed laches on its face.

In the case of *Wills* v. *Nehalem Coal Co.*, 52 Or. 70 (96 Pac. 528), the necessity of pleading laches within the statutory period of limitations was apparently before this court for the first time. Mr. Commissioner SLATER speaking for the court at page 91 is reported to have said:

"In such cases, courts of equity are also said to act by analogy to the statutory limitations of actions at law and there is sound authority for the rule that when suit is brought within the time fixed by the analogous statute, the burden is on defendant to show the existence of circumstances amounting to laches. When, however, the suit is brought after the statutory time, plaintiff must plead and prove that laches does not exist, and the facts must be specifically and and precisely pleaded: 16 Cyc. 180; 1 Pomeroy's Equitable Remedies, § 20. Nor are we prepared to say at this time that, if knowledge of the acts of the directors for the full period were imputed on the face of the complaint to the plaintiffs without disclosing any injury to the defendants arising from the delay, that of itself would be sufficient to establish laches under the fact of this case: *Montgomery Light Co.* v. *Lahey*, 121 Ala. 131 (25 South. 1006). But we shall leave the matter to be determined upon all of the facts."

In *Bailie* v. *Columbia Gold Min. Co.*, 86 Or. 1 (166 Pac. 965, 167 Pac. 1167) , Mr. Justice McCAMANT at page 23 says:

"An action at law for the recovery of a dividend would have to be brought within six years: Section 6

L, O. L.   Equity is disposed to follow the law.   If an equitable suit is brought within the time allowed to bring a corresponding action at law, the *burden devolves on the defendant to allege and prove laches;* if the equitable suit is brought after the expiration of the time allowed to bring corresponding action at law, plaintiff should explain the delay in his bill: *Wills* v. *Nehalem Coal Co.,* 52 Or. 70, 91 (96 Pac. 528)." .

11. The plaintiff has been persistent in asserting his rights ever since his illegal discharge.   He has never waived or abandoned his claim.   The plaintiff should be accorded a regular hearing upon written charges in compliance with Section 316 of the City Charter before he is discharged.   It has been held that where the statute of limitations has not run against a claim a *mandamus* to enforce the claim will not be refused on the ground of laches: *Hanna* v. *Chalker,* 136 Mich. 8 (98 N. W. 732); *State* v. *Renick,* 157 Mo. 292 (57 S. W. 713).

In *Hill* v. *Mayor of the City of Boston,* 193 Mass. 569 (79 N. E. 825), at the trial of a petition by a veteran enrolled in the classified list of the public service and holding the office or employment of messenger in the printing department of a city, for a writ of *mandamus* commanding the mayor and the superintendent of the printing department to recognize the petitioner as the messenger of that department and to place his name on the pay-roll of the city as such messenger, it appeared that immediately after the plaintiff was notified orally of the abolition of his position and his discharge from employment he retained counsel who thereafter acted for him, but that owing to poverty he could not furnish money to prosecute his case until two years after his discharge, when he brought an action of contract against the

112 Or.—7

city for arrears of salary, and, this action having been terminated by the presiding judge ordering a verdict for the defendant, he thereupon brought his petition for the writ of *mandamus*. In that proceeding the justice who heard the case found as facts that the petitioner never abandoned his claim that he had been removed from office unlawfully, and that he was advised that his action for salary was the proper remedy to test this question. Held, that under the circumstances the delay of two years before bringing the action of contract could not be said to be such an acquiescence by him in his dismissal as to require the court to deny him the writ of *mandamus*.

It was there held that on a petition for a writ of *mandamus* the question whether the petitioner so unreasonably has neglected to enforce his right that the court will deny him the remedy must depend upon the circumstances of each particular case.

It is also contended by the defendant that the allegation of the alternative writ, to the effect that the plaintiff duly made a demand upon defendant to be reinstated, is not supported by the evidence. There is no merit in this contention. The proof shows that plaintiff offered to perform the duties of policeman, and persistently requested to be reinstated and made a formal petition to the city officials to that end and was refused. Sections 108 and 316 of the City Charter are plain and need no construction. Obedience to those provisions is all that is necessary in cases of this kind.

We adhere to our former opinion. The petition for rehearing is denied.          REHEARING DENIED.

McBRIDE, C. J., and BROWN and RAND, JJ., concur.