Argued October 20, demurrer sustained December 2, 1925.

## A. J. NOBLE *v.* S. W. YANCEY, Sheriff.

(241 Pac. 335.)

**Waters and Watercourses—Bonds of Irrigation District are General Lien Obligations, for Payment of Which All Lands Within District are Taxable.**

1. Under Sections 7305 et seq., 7358–7360, Or. L., and Laws of 1917, pages 756–758, Sections 22, 24, bonds of irrigation district, created under General Laws of 1915, page 234, are general lien obligations, requiring the assessment of all the land in the district for the payment of principal and interest, which necessarily requires the assessment of each current year under Section 7326, Or. L., to be sufficiently broad to take care of actual and contemplated delinquencies in prior assessments.

**Waters and Watercourses—Computation of Money Needed by Irrigation District for Ensuing Year Governed by the Law in Effect at Date of Such Computation.**

2. Computation made by board of directors of irrigation district as to money needed by district for ensuing year was governed by law in effect at date of such computation and final determination.

**Waters and Watercourses—Bonds, Issued to Refund Other Bonds of Irrigation District, Governed by Laws Then in Force.**

3. Bonds, issued by irrigation district to refund other bonds, were governed by Laws of 1917, page 743, and acts amendatory and supplementary then in force, and were of same force and effect as if they had such laws written into them.

**Waters and Watercourses—Persons Organizing Irrigation District Thereby Bound Themselves or Their Lands to Pay Proportionate Share of Total Cost of Irrigation Project.**

4. Persons organizing an irrigation district in 1916 bound themselves or their lands to pay proportionate share of each of total cost of irrigation project.

Waters and Watercourses — All Land in Irrigation District, Organized Under Any Irrigation District Statute, is Liable for Just Obligations of District.

5. All land in irrigation district, organized under any irrigation district statute, is liable for just obligations of district.

Waters, 40 Cyc., p. 817, n. 83, p. 822, n. 31 New, p. 824, n. 50 New, 51, 52, 55, 56.

Original proceedings in *mandamus*.

This is an original proceeding in *mandamus* to test the validity of an assessment made by the Ochoco Irrigation District, a municipal corporation.

The alternative writ alleges substantially the following facts: The plaintiff, A. J. Noble, is a land owner in the district. Defendant S. W. Yancey is sheriff of Crook County, Oregon.

The Ochoco Irrigation District is a municipal corporation organized February 5, 1916, pursuant to an act of the legislative session of 1915, General Laws of 1915, Chapter 189, and comprises approximately 20,000 acres of irrigable land.

Pursuant to a majority vote of the owners of land within the irrigation district, bonds for the construction of the reservoir, canals, etc., were issued November 11, 1916, and sold to the public. These bonds were refunded by a majority vote of the land owners within the district on February 2, 1922. Neither Chapter 189, Laws of 1915, nor any other statute in existence at the date of the organization of the Ochoco Irrigation District contained any authority for levying upon or assessing any land within the district for the purpose of paying the delinquencies in payment of the assessment upon the other lands within the district. After the organization of the district and after the bonds of the district were voted and sold, but prior to the refunding of said bonds, to wit, on

February 21, 1917, the legislature repealed Section 9 of Chapter 189, Laws of Oregon of 1915, and in substance re-enacted it in Sections 22 and 24 of Chapter 357, but added thereto in Section 22 of that chapter the following:

"In case the amount assessed against any tract of land shall not be paid the next assessment against the land in the district shall be so increased as to take care of such default;   *   *

and in Section 24 of that chapter the following words were added:

"The board of directors shall, on or before the first Tuesday in September of each year, make a computation of the whole amount of money necessary to be raised by said district for the ensuing year, for any and all purposes whatsoever in carrying out the provisions of this act, including estimated delinquencies on assessments."

Section 49 of Chapter 357, Gen. Laws of Oregon of 1917, provides as follows:

"Nothing in this act shall be so construed as to affect the validity of any district heretofore organized under the laws of this state, or its rights in or to property, or any of its rights or privileges of whatsoever kind or nature; but said districts are hereby made subject to the provisions of this act so far as applicable; nor shall it affect, impair or discharge any contract, obligation, lien, or charge for, or upon which it was or might become liable or chargeable had not this act been passed; nor shall it affect the validity of any bonds which have been issued but not sold; nor shall it affect any action which may now be pending, but all irrigation districts hereafter organized shall be organized under the provisions of this act and not otherwise."

The plaintiff was at the organization of the Ochoco Irrigation District on February 5, 1916, and still is

the owner of 160.3 acres of land, described in the writ, which is irrigable and lying within the boundaries of the irrigation district and subject to assessment for all legitimate purposes pertaining to the district. The petitioner voted against the organization of the district and the issuance and refunding of the bonds.

On the twenty-eighth day of August, 1925, taxes and assessments against petitioner's said lands for the year 1924 remained due and unpaid and were delinquent. On that date, at the office of the sheriff of Crook County, Oregon, in Prineville, petitioner tendered to the defendant, as sheriff of Crook County, $950.63, the full amount of the 1924 taxes, penalties and interest levied against the same, except five cents per acre assessed by the board of directors of the Ochoco Irrigation District and extended upon the tax-roll by the assessor of Crook County, Oregon, amounting to $8.01, "for delinquencies on assessments," and demanded that the sheriff issue to petitioner receipt in full and note on the tax-roll against the property paid on, in columns provided therefor, the date of such payment and number of receipt. The sheriff refused to accept said tender and refused to issue such receipt or to note on the tax-roll the date of the payment.

Section 22, General Laws of 1917, Chapter 357, among other things provides as follows:

"Any assessment upon lands shall be a lien against the property assessed * * and no district assessment lien shall be removed until the assessments are paid with interest and penalty or the property sold for the payment thereof."

The board of directors of the Ochoco Irrigation District on the first Tuesday of September, 1924,

made a computation of the whole amount of money necessary to be raised by the district for the year 1924 for any and all purposes whatsoever in carrying out the provisions of this act including five cents per acre for delinquencies on assessments and the amount was duly entered upon the assessment-roll against the property of plaintiff. The pretended assessment of five cents per acre for delinquencies still remains upon the county assessment-roll uncanceled, and an apparent lien upon plaintiff's land.

As shown in defendant's petition for intervention, the intervening defendant is the owner and holder of a bond of the district issued July 1, 1922. There is no allegation in the alternative writ that plaintiff appeared before the board of directors sitting as a board of equalization.

Defendant demurs to the writ upon the grounds that the same does not state sufficient facts.

DEMURRER SUSTAINED.

For plaintiff there was a brief and oral argument by *Mr. M. R. Elliott.*

For defendant there was a brief and oral arguments by *Mr. L. M. Bechtell* and *Mr. Willard H. Wirtz.*

*Mr. N. G. Wallace,* for intervener, and *Mr. John K. Kollock, in propria persona.*

BEAN, J. — The demurrer raises the question whether the bonds issued by the Ochoco Irrigation District and now existing are in fact general obligation bonds, or severable only.

The law relating to the organization and operation of irrigation districts, including the issuance and sale

of bonds in this state, is contained in Chapter XIV, Or. L., in Section 7305 et seq. Section 7326, Or. L., is as follows:

"Said bonds and the interest * * and all obligations for the payment of money authorized and incurred under this act, shall be paid by the revenue derived from the annual assessments upon the land in the district, and all the lands in the district shall be and remain liable to be assessed for such payments as herein provided, and under and subject to the provisions of this act.

"In case the amount assessed against any tract of land shall not be paid the next assessment against the land in the district shall be so increased as to take care of such default. In addition to the provision for the payment of said bonds and interest by taxation and other provisions of this act, all the property of the district, including irrigation and other works, shall be liable for the indebtedness of the district, * * ''

Section 7328, Or. L., provides in part as follows:

"The board of directors shall, on or before the first Tuesday in September of each year, make a computation of the whole amount of money necessary to be raised by said district for the ensuing year, for any and all purposes whatsoever in carrying out the provisions of the act, including estimated delinquencies on assessments. Said amount of money, when so determined by said board, shall be and constitute an assessment upon all of the land included in said district, and shall be apportioned by said board to the lands owned or held by each person, firm, or corporation, so that each acre of irrigable land in the district shall be assessed and required to pay the same amount as every other acre of irrigable land therein, except as hereinafter otherwise provided. The board of directors shall determine the number of irrigable acres owned by each land owner in the district and the

proportionate assessments, as herein provided for as nearly as may be from available information, and should it be found that a substantial error has been made in such determination, proper adjustment may be made at the next equalization of the annual assessment by increasing or decreasing the amount any land owner shall pay. * * "

The first law in this state known as the "Irrigation District Law," General Laws of Oregon of 1895, page 22, Section 17, was an adoption by the State of Oregon of the Wright Act of California, which has been adopted in substantially the same form by practically all of the arid and semi-arid western states. It has been amended several times by the legislature and was finally re-enacted as Chapter 357 of the General Laws of 1917 and has since been amended.

1. The Oregon Irrigation Law, ever since its first enactment, has contained the provision: "Said bonds and the interest thereon shall be paid by revenue derived from the annual assessment upon the land in the district, and all of the land in the district shall be and remain liable to be assessed for such payments as hereinafter provided." Gen. Laws 1895, p. 22, §17; Ballinger & Cotton's Code, § 4716; Laws 1909, Chap. 219, p. 367, § 3; Gen. Laws 1917, Chap. 357, § 22; Or. L., § 7326. This provision in itself constitutes the bond's general lien obligations, and requires the assessment of all the land in the district for the payment of principal and interest thereof, which necessarily requires the assessment of each current year under the statute to be sufficiently broad to take care of actual and contemplated delinquencies in prior assessments: *American Falls Reservoir Dist.* v. *Thrall,* 39 Idaho, 105 (228 Pac. 236, 241, 242); *State*

*ex rel. Clancy* v. *Columbia Irr. Dist.,* 121 Wash. 79 (208 Pac. 27, 31).

The enactment of the Irrigation District Act by Chapter 357 of the Laws of 1917 did not change the character of the charges and expenses of a district, nor the bond lien, or change the duty of the board of directors to levy annual assessments upon the land in the district for the payment of charges and expenses and bonds and interest thereon, but merely provided an express machinery to accomplish such purpose: Sections 7326 and 7328, Or. L.; *State ex rel. Clancy* v. *Columbia Irr. Dist., supra.*

Section 7358, Or. L., specifically provides for the ·manner of contesting any action of the board of directors in levying an assessment against the lands of the district, and including in its budget on September 1, 1924, an amount equal to approximately five cents an acre to cover estimated delinquencies. That section reads in part: " * * after any order of such board levying any assessment, general or special." Section 7359, Or. L., prescribes the nature of the proceeding, jurisdiction, who may appear, trial, appeal, time and determination. Section 7360 provides that:

" * * any free holder, legal voter, or assessment payer within an irrigation district or drainage district, may, within thirty days after the entry of any order, or the performance of any of the acts men· tioned in Section 7358, and for which a contest is by said section provided, may bring a like proceeding in the circuit court of a county where the lands embraced within such district, or the majority thereof, are situated to determine the validity of any of the acts, orders or things enumerated in this act. * * "

2. The computation made by the board of directors and finally established at the meeting on the first

Tuesday in October, 1924, was governed by the law, in effect, at the date of such computation and final determination: *State ex rel. Clancy* v. *Columbia Irr. Dist., supra.* We are not, however, ready to concede that the law then in force differed in principle from the prior acts relating to irrigation districts.

3. Under the allegations of the alternative writ all outstanding bonds of the district, including the bond owned by the intervening defendant, were issued subsequent to February, 1922, and the rights of such bond owners as to the assessment of lands within the district for the payment of the principal and interest of such bonds is governed by the law in force at the date of such bonds, namely, the law of 1917, with acts amendatory thereof and supplementary thereto. This is so by virtue of the contract and obligation of the district at the time it issued the bonds mentioned in the writ as refunded bonds. Such bonds became a new obligation of the district. They differed in no way from the bonds originally issued except as to their date. They are of the same force and effect as if they had the irrigation law written into them: *State ex rel. Clancy* v. *Columbia Irr. Dist., supra.*

Under the Irrigation District Law in force at the time of the computation of the assessment, of which the plaintiff complains, Chapter 357 of the Laws of 1917, with acts amendatory thereof and supplementary thereto, there were three distinct provisions directing the board of directors to provide for delinquencies in the payment of previous assessments. This is but another way of stating that the lands of the district shall "be and remain liable," etc., as provided in the old act.

According to the allegations of the alternative writ, the board of directors complied with the provision of Section 7331, Or. L., and after it had completed at its meeting on the first Tuesday in October, its equalization of the assessment, based upon the computation and budget made at the meeting on the first Tuesday in October, it certified the roll to the county assessor and the county assessor entered the amount so apportioned upon the county assessment-roll against the property, and thereafter the roll was delivered by the county assessor to the sheriff, as tax collector of Crook County, for collection and accounting in the same manner as other municipal taxes.

The Irrigation Law of Oregon, as it existed since the enactment of the original law of 1895, including the enactment of Chapter 357 of Laws of 1917, being Section 7305 et seq., Or. L., contained the provision above quoted from Section 7326, including the clause, "and all the lands in the district shall be and remain liable to be assessed for such payments as herein provided, and under and subject to the provisions of this act."

In the State of Idaho, the question substantially the same as in the present case was finally decided on May 13, 1924, when the Supreme Court of that state rendered its decision in the case of *American Falls Reservoir Dist.* v. *Thrall,* 39 Idaho, 105, 121 (228 Pac. 236). Mr. JUSTICE LEE quotes Idaho's Comp. Statutes, Section 4369:

"Said bonds and the interest thereon shall be paid by revenue derived from the assessment upon the lands in the district; and all the land in the district shall be and remain liable to be assessed for such payment; provided, that payment of interest may be made in accordance with the provisions of Article 5 of this chapter."

This statute is much the same as the Oregon statute as it existed prior to the enactment of 1917. It was this section which the Supreme Court of Idaho was called upon to construe and, after an extensive analysis of the Irrigation District Law, the court said, as shown on page 122 et seq:

"From the foregoing provisions, we think it was the intention of the legislature in the enactment of these various statutes, to make the obligations of an irrigation district a general and not a specific lien against all of the property of the district. Plainly, if all the land in the district shall be and remain liable to be assessed for its indebtedness, * * none of the lands within the district can be released from any of the district's indebtedness, except upon payment of the same. * * It results from what has been said, * * that these lands are and must remain liable for the taxes or assessments levied to pay such obligations, until the same are fully discharged; that the board of directors of respondent district may make an annual levy of 15% in excess of the amount required to meet the payment of principal and interest on these bonds, if all the district taxes were paid without delinquency, which fund must be used to meet any deficiency caused by delinquencies, * * ."

In the case of *State ex rel. Clancy* v. *Columbia Irr. Dist.*, *supra*, the Supreme Court of Washington, speaking through Mr. Justice HOVEY, in construing the statute apparently much the same as our own, said:

"The provisions of the statute relative to bonds make it plain that they are the obligations of the district as a whole. The language used in reference to them is fully as comprehensive as that relating to any of the general obligations of any of the other municipalities of the state. * * That the obligation is a general one has been assumed by all courts which have had occasion to pass upon the question, either

directly or indirectly, until the recent decision of *Interstate Trust Co.* v. *Montezuma Dist.*, 66 Colo. 219 (181 Pac. 123). * * It is argued on behalf of certain bondholders, that the inclusion of these lands will so apportion the amount to be raised as to produce an insufficient sum. The law requires the taxing officers to levy a sufficient sum to produce the amount needed, and they will naturally make allowance for delinquencies, and the money will eventually be raised, if there remain land in the district which continues to pay the assessments; for, as necessarily follows from what we have said, there should be added to the amount needed to pay the interest and principal due in a current year, a sufficient sum to cover the delinquencies of the previous year, and this is expressly provided for by section 6437, as amended by Laws of 1921, page 448.''

We are constrained to ask ourself this question. If five or ten acres of land in an irrigation district in this state should be washed away, or in some way practically obliterated, would the charges and expenses of operation of the irrigation system of the district and the bonds regularly issued by the district be valueless to the extent of the assessments that would ordinarily be made on the land of the district, so destroyed? We think not. This supposition is not a fanciful one. It would be quite possible for a worse condition to actually occur. Suppose a 1,000-acre tract of land has an appurtenant water right from a certain stream, of date 1890. There is a 500-acre tract adjoining for which it is thought water can be obtained by the construction of a new canal from the same stream. The whole 1,500 acres are included in a regularly organized irrigation district and bonds in the sum of $100,000 are issued by the district to pay for the canal and other obligations of the district. After the canal is

built it transpires that there is not sufficient water to irrigate the additional 500 acres. The assessments thereon are delinquent and the 500 acres of land without water is practically worthless. Could any court reasonably hold that under our Irrigation District Law, or any law, in principle the same, all the land in the district would be liable to be assessed for the payment of the principal and interest of the bonds and other obligations of the district? As to the bonds, such payment is an obligation nominated in the bonds and all of the land in the district would not be liable therefor.

In the case of *Norris* v. *Montezuma Valley Irr. Dist.*, 248 Fed. 369, 373 (160 C. C. A. 379), as quoted in the *Clancy* v. *Columbia Irr. Dist.* case, *supra,* we read:

"In order to give to these statutes the construction contended for by defendants in error, it is necessary to read into them a provision that there shall be paid on the bonds only so much as the annual levy shall produce in money collected; whereas the statute is peremptory that the bonds and interest shall be paid, and the remaining provisions only indicate the source and mode of obtaining the fund. * * A statutory obligation of a municipal corporation or *quasi-*municipal corporation to pay its debt, or to fix a rate of levy necessary to provide the amount of money required to pay its debt is not satisfied by an assessment and rate of levy sufficient to pay the debt if the taxes are collected, but requires that there be a sufficient assessment and levy and collection of the taxes as levied to actually pay the debt." Citing *East St. Louis* v. *Amy,* 120 U. S. 600 (30 L. Ed. 798, 7 Sup. Ct. Rep. 739); *Rialto Irr. Dist.* v. *Stowell,* 246 Fed. 294 (159 C. C. A. 24); *Boynton* v. *Dist. Township of Newton,* 34 Iowa, 510.

The very purpose of the organization of an irrigation district is that the owners of the land may make a united effort to accomplish the purpose of irrigation.

4. A strong argument is made, the peroration of which, embracing all of the logic that can be mustered in that direction, reads thus:

"The plaintiff in this case did not contract with the State of Oregon in 1916, when he was taken into the District that he would pay any part of the benefit accruing to other lands but only that he would pay his proportionate share of the total costs of the irrigation project."

This argument is based upon a false premise. When the plaintiff and others organized the district, he and they bound themselves or their lands, to pay the proportionate share of each, of the total cost of the irrigation project.

5. If A., an owner of land in the district, fails to pay his assessment, the proportionate share of the other land owners or the cost of the project to them is increased temporarily. They pay their own cost, and nothing more, with the chance of getting a return in reduced assessments when the land of the delinquent is sold and the delinquent assessments realized. This is the only basis upon which a municipal or a *quasi*-municipal corporation can be organized. In this way only can the spirit and letter of the law be carried into effect, as well as the consummation of the solemn contract of the district expressed by the vote of the land owners when the obligations of the district were incurred, and written into the evidences of a portion of such debts. Figuratively speaking, every tract of land in the district is by virtue of the engagements entered into a surety for the payment of the assess-

116 Or.—24

ment on every other tract therein. Any other compact, framed under some fine-spun theory adopted as the basis for our irrigation districts, and such districts, must necessarily be a failure, for want of organized effort or unison in operation. For that matter all municipalities, great and small, are affected in the same manner. In any organized society the same basic principle is applicable. All of the land, in a district organized under any irrigation district statute, in this state is liable for the just obligations of the district. They are the debts of the district, and each statute when the intent of the legislature is developed provides for the liability of all of the land for the payment of the district obligations. They differ in language and to a certain extent in details as to the mode or machinery for carrying them out. This principle is adopted by the consent of the land owners expressed by the requisite majority when an irrigation district is organized. The statute of 1917, without changing the basic principle of the plan for an irrigation district, plainly directed the manner of raising the funds to meet the expenses and obligations of such district so that the language of the statute would be clearly understood by the directors of the several irrigation districts in the state, not all of whom are lawyers.

To carry out the theory of plaintiff, each land owner, when it is necessary for a district to issue bonds to pay for constructing canals or an irrigating system, or for purchasing the same, should sign an individual bond. The Supreme Court of Colorado, in the case of *Interstate Trust Co.* v. *Montezuma*, 66 Colo. 219 (181 Pac. 123), has taken a view diametrically opposed to the opinion in the Washington case of *State* v. *Columbia Irr. Dist., supra,* and also the

Idaho case cited above, and the enunciation herein contained, although the language of the Colorado statute appears to be somewhat different from ours.

For the reasons herein suggested the demurrer to the alternative writ is sustained.

Demurrer Sustained.