Argued April 3; affirmed as to defendants Gard and Henderson, reversed as to Ralph Schneeloch Co., May 28, rehearing denied June 25, 1929.

## L. A. YOUNG ET AL. *v.* H. W. GARD ET AL.

(277 Pac. 1005.)

For appellants there was a brief over the name of *Messrs. Carson & Carson,* with an oral argument by *Mr. Allan G. Carson.*

For respondents there was a brief and oral arguments by *Mr. John K. Kollock* and *Mr. N. G. Wallace.*

BEAN, J.—This case is well presented by briefs and oral arguments. We approach the question involved with an appreciation of its importance both to the litigants herein and to a considerable portion of the public. The main contention hinges upon the claim of plaintiffs that the contract granting an option by the directors of the irrigation district to the Ralph Schneeloch Company, which we term the company, was wholly void as not authorized by the Irrigation District Law, countered by the contention

of defendants that the same constituted a valid binding contract. It is the claim of defendants that the time for a freeholder legal voter or assessment payer within an irrigation district to contest the validity of the act of the board of directors in granting an option and then purchasing the same back for the district, provided in the statute, had expired long before this suit was begun, and that the suit by virtue of the provisions of Section 7358, Or. L., cannot be maintained. Section 7360, Or. L., provides:

"Any freeholder, legal voter or assessment payer within an irrigation district may, within 30 days after the entry of any order, or the performance of any of the acts mentioned in section 7358 and for which a contest is by said section provided, (may) bring a like proceeding in the circuit court of the county where the lands embraced within such district, or the majority thereof, are situated, to determine the validity of any of the acts, orders or things enumerated in this act and concerning which the right of contest is by said act given."

Therefore, if the action of the board of directors with the company in giving the company an option for the sale of the bonds and the delivery of the $20,000 in bonds to the company, is not enumerated in Section 7358, Or. L., nor in the act, and no right of contest concerning the same is given by said act, then the suit does not come within the purview of said section and we must look to the general law for direction in the matter. In other words, if the acts of the directors complained of by the assessment payers come entirely without the pale of the statute, as contended by plaintiff, then the 30-day limitation would not apply. Hence the question recurs as to the validity of the transaction and the efficacy of the suit.

■ The Jefferson Water Conservancy District is a municipal corporation. As stated by Mr. Justice BROWN in *Twohy Brothers* v. *Ochoco Irr. Dist.,* 108 Or., at page 11 (210 Pac. 876):

"An irrigation district organized under the irrigation district law of this state is a municipal corporation, its property public property, and its officers public officers, elected by the legal voters of the irrigation district, with duties and powers fixed and limited by the law of their creation. Such a district 'is created for a public purpose and it rests in the discretion of the legislature when to create it and with what powers to endow it' (citing *Fallbrook Irrig. Dist.* v. *Bradley,* 164 U. S. 112 (41 L. Ed. 369, 17 Sup. Ct. Rep. 56), see, also, Rose's U. S. Notes)."

■ In *Noble* v. *Yancey,* 116 Or. 356 (241 Pac. 335, 42 A. L. R. 1178), which was a proceeding in *mandamus* to test the validity of an assessment made by the Ochoco Irrigation District, the case involved the validity of one of the things "enumerated in the act." Counsel for defendant, in referring to and quoting from the opinion in that case overlook, or ignore, a portion of the provision for such freeholder or assessment payer to bring a proceeding within 30 days after the entry of any order "or the performance of any of the acts mentioned in Section 7358, Or. L., and for which a contest is by said section provided." The act in question in this suit is not one of those enumerated in Section 7358, Or. L., or in the act.

■ The question arises as to the right of the plaintiffs to maintain this suit. They were land owners within, and electors of, this irrigation district. Obligations of the district, for which their lands were liable, were disposed of by the directors of the district

to the defendant Ralph Schneeloch Company, as plaintiffs contend, wholly without warrant of law. The dissatisfied land owners and assessment payers of the district held a consultation and appointed a delegation to wait upon the directors of the district, and requested that proceedings be instituted by the board in the name of the district to require restitution of the bonds, or the payment therefor, for the use and benefit of the district. This request was made of the directors of the district. This the board refused to do and one of the directors, as the evidence shows, stated in effect that it would be foolish to take such action.

■ There is some controversy in regard to this point, but Mr. John Henderson, one of the plaintiffs, testified, in substance, that he, Mr. T. A. Taylor and J. C. Sothman, also plaintiffs, met with the board at their office and the chief conversation was to request that an action be brought through or by the board against the Ralph Schneeloch Company for the recovery of the $20,000 of bonds. That Mr. Gard, one of the directors, acted as spokesman for the board and they refused to accede to the request made. The other plaintiffs testified to the same effect. This request was made before filing the complaint. This is answered by the directors, in effect, that they do not remember of any such request. We are unable to concur with the learned trial judge in his finding that no such demand is proven.

It is the contention of the defendants, in effect, that a legal demand must be shown to have been made upon the directors, "that a proceeding be instituted identical with the one which has been instituted by the plaintiff." This would mean that the land owners of the district must outline to the directors

the kind of action or suit to be brought. We do not understand that this is required by the law or practice. A better way no doubt would be to serve a written request and save a controversy in the proof.

██ It is settled by the great weight of authority that where an unlawful expenditure of money has been made by the officers of a city or county, and the proper authorities refuse to compel its restitution, a taxpayer may bring a suit on behalf of himself, and others similarly situated, to recover the amount for the benefit of the municipality. We think the same rule will apply to an irrigation district: *McKenna* v. *McHaley*, 62 Or. 1, 3 (123 Pac. 1069), and authorities there cited. See, also, *Gosso* v. *Riddell*, 123 Or. 57, 61 (261 Pac. 77); *Carman* v. *Woodruff*, 10 Or. 133; *Gosso* v. *Hart*, 123 Or. 67 (261 Pac. 80).

In the latter case there was no allegation in the complaint that the plaintiff petitioned the county court to cause the action to be brought by the county and no allegation of their refusal so to do, and yet it was held that a general demurrer to the complaint would not lie. Mr. Justice McBRIDE stated, as shown at page 68 of the report (261 Pac. 80), in substance, that the complaint was perhaps technically deficient in omitting such allegation, but as it was stipulated that such application had been made to the County Court and refused, it was held that the stipulation cured the defect in the complaint, if any existed. This opinion and many others indicate that in a suit in equity of the nature of the one in hand, it is the substance and not the form that should be given special consideration. We think the plaintiffs had capacity to bring this suit.

██ Plaintiffs contend the irrigation district in this suit has no power or authority to execute an option

agreement to sell its bonds at any price. Section 7325, Or. L., as amended by Chapter 394, General Laws of Oregon, 1921, p. 776, provides for the sale of bonds. Before making any sale the board is required to declare its intention to sell a specified amount of bonds, to fix the day, hour and place of such sale and cause notice to be given by publication. After offering said bonds for sale, as provided in said section, if no satisfactory bid is received, the board may use said bonds for any purpose for which the proceeds from the sale of bonds may be used; but such board shall in no event sell or dispose of any of said bonds for less than 90 per cent of the face value thereof unless such sale or disposal is approved by the commission created by Article XI-b of the Constitution.

In the present case there was no authority by such commission to sell any bonds of the district for less than 90 per cent of the face value. This statute limits the sale of the bonds of an irrigation district to be made in a particular manner. The mode becomes the measure of the power and negatives the right of the directors to sell such bonds in any other manner: *Twohy Bros. Co.* v. *Ochoco,* 108 Or. 3 (210 Pac. 873, 216 Pac. 189); 3 Kinney on Irrigation (2 ed.), 2559, and note 4; *Hughson* v. *Crane,* 115 Cal. 404 (47 Pac. 120).

■ We think it is the general rule that when a municipality is given authority to issue and sell its bonds it must observe the restrictions as to the mode by which and the terms upon which they may be sold: *O'Neill* v. *Yellowstone Irrigation District,* 44 Mont. 492, 515 (121 Pac. 283, 290).

In *Gosso* v. *Riddell, supra,* this court in an opinion by Mr. Justice McBride, adopting the language of Honorable Wm. Ramsey, Circuit Judge, formerly a member of this court, records the following at page 60 of the report (261 Pac. 78):

"A county is a *quasi*-public corporation, and the right of taxpayers to bring a suit against persons who have illegally obtained funds from the county is analogous to the right of stockholders in private corporations to sue for injuries to a private corporation. If someone obtains funds wrongfully from a private corporation, and the officers of the corporation refuse to sue to recover it, a stockholder may bring a suit for himself and other stockholders to recover it for the corporation."

In the latter case, brought by a taxpayer, one of the causes of suit was for the recovery of several hundred dollars for mileage asserted to have been unlawfully paid by the county to a county commissioner.

In *McKenna* v. *McHaley, supra,* the same writer said, as appears at page 3 of 62 Or. (123 Pac. 1069):

"The principal question arises upon the right of plaintiffs to bring this suit. We think it settled by the great weight of authority that, where an unlawful expenditure of money has been made by the officers of a city or county, and the proper authorities refuse to compel its restitution, a taxpayer may, by a suit on behalf of himself and others similarly situated, recover the amount for the benefit of the municipality (citing many authorities)."

As noted in the last case, this state is said to stand alone in enunciating a contrary rule in *Brownfield* v. *Houser,* 30 Or. 534 (59 Pac. 843). It is so shown in a note to *Walker* v. *Dillonvale,* 82 Ohio St. 137 (92 N. E. 220, 19 Ann. Cas. 773). See 7 R. C. L. 965, § 39.

The rule now prevailing in this state is clearly set forth in the later cases; or in other words, upon this question the way is paved.

It is not claimed by the learned counsel for the company that the statute in express terms authorizes the irrigation district to give an option for the sale or purchase of the bonds. It is plain that it does not contemplate or imply in any manner that such a contract can be made by the district. An irrigation district is a creature of the law, its powers are conferred by law and the powers and duties of its officers are defined and limited by the statute.

The district, acting through its officers, is just as firmly bound by the statute in selling the bonds of the district as in the holding of a bond election and voting for and issuing bonds. We state this so that the officers of such a district, though laymen, may understand.

Anent the option question, it is suggested by one of the associates of the writer, that a sheriff with a valid execution for the sale of property in his hands would have the right to sell property by virtue of such execution, but he would not have the authority to grant an option for the sale of any such property. So here, while the directors of the district had a right to sell the bonds of the district, as provided in the statutes, they had no right to grant an option for the sale of such bonds. The giving of such an option, while at first blush it might seem advantageous to an irrigation district, if it could be regularly done, would in fact tie up the bonds so that a sale could not be made by the district other than to or through the optionee. Such a plan is not authorized by the statute.

Mr. H. W. Gard, who appears to have been the moving spirit of the directors, and took an active part in the negotiations for the district, testified on cross-examination in regard to the delivery of the $20,000 bonds of the district in controversy as follows:

"Q. Now the only obligation which the Ralph Schneeloch Company then held against the Jefferson Water Conservancy District on January 20, 1923, was this option agreement of November 21, 1922, was it not?

"A. That was the only legal hold he had on the district.

"Q. And what you did with respect to the other matters was out of the kindness of your heart?

"A. Yes, sir.

"Q. And what you felt right?

"Q. Without having any, or feeling any legal obligation to do it whatever?

"A. Yes, sir."

There is practically no conflict in the evidence as to the main facts. Some conclusions of the witnesses may differ. We refer to some of the testimony for a setting.

■ Counsel for the company argue that if the contract, by which the bonds were turned to the company, was void, "then they (the bonds) are void in the hands of anyone," and that the parties have mistaken their remedy, and cite the case of *Klamath County* v. *Leavitt*, 32 Or. 437 (52 Pac. 20), which was an action to recover the face value of county warrants alleged to have been illegally issued to defendant and void but never paid. It was held that if void they were valueless in the hand of any holder and the county was under no obligation to pay them and could not recover without having done so. That is not similar to the situation in the present case. It was stipulated at the outset of the trial that the bonds

were validated by a decision of this court "and are a valid obligation on the district." The issuance of the bonds pursuant to the statute is beyond controversy. They are valid negotiable instruments, obligating the district to pay the face value thereof with interest. They are unlike illegal county warrants. The case cited is not in point. It would be very hazardous, to say the least, for the parties to wait and litigate the bonds in the hands of an innocent holder. Such a procedure would not afford an adequate remedy, if any.

To restate, in part, bonds of the district, in the sum of $50,000 were sold by the district through Ralph Schneeloch Company for 90 per cent of the face value, and later an additional $20,000 in bonds were sold at private sale at the same price. The whole of the proceeds of such sale was used in the development of the water system of this district. Surveys, estimates and maps containing data were made largely in order to pave the way for the sale of the remaining $930,000 of the bonds, which had been regularly issued pursuant to a valid election held in the district and which had been validated by an opinion of this court. (*Bay City* v. *Lumbermen's State Bank,* 193 Mich. 533 (160 N. W. 425); *Koochiching County* v. *Elder,* 145 Minn. 77 (176 N. W. 195).

It was agreed that the $20,000 in bonds turned over to Ralph Schneeloch Company, which are in controversy, were regularly issued and were valid obligations of the district. It is claimed on behalf of the company that there was a consideration for the contract canceling the so-called option contract, consisting of proceedings taken by Mr. Schneeloch on behalf of his company in assisting the district in the proceedings, part of which have been mentioned.

Among other things is enumerated the employment of eminent engineers, Mr. N. J. Wiley, of Idaho, and Mr. Fred C. Herman, of San Francisco, named as the best in the country, and also the furnishing of learned counsel for the district in attending to legal matters. However, it is shown that the engineers of the district made the surveys on the ground, etc., and that the irrigation district paid for the services of these engineers, and also paid $1,500 for the services of the attorney named by Mr. Schneeloch. Mr. Schneeloch was granted the privilege of naming for his company those who would attend to these several matters, but the district, presumably out of the sale of the $70,000 par value bonds, paid the compensation for such services. No doubt Mr. Schneeloch and his company devoted both valuable time and some expense in furthering the interest of the issuance of the bonds, but a careful reading of the testimony clearly indicates that this was done for the purpose and with the expectation of making a sale of the balance of the $930,000 of the bonds. Not a cent was charged by the company to the irrigation district. The whole testimony indicates that nothing was expected to be paid by the district to the company, except as a profit which it might obtain in the sale of the remaining bonds. In other words, the company proceeded in this matter as any bonding house would, taking its chances of making a profit out of the final transaction of selling the remaining bonds.

Referring to these things which the company did, Mr. Schneeloch, as a witness testified on cross-examination in part as follows, in answer to the question:

"Now, you say you presented no claim against the district, but when the district took away, or took back this option, you expected compensation, is that right?

"A. Absolutely.

"Q. In other words, you expected to get your compensation from the disposal of the bonds?

"A. Absolutely.

"Q. That is where you were looking for your compensation?

"A. Yes, sir."

We have read the testimony with care and fail to find any evidence that the district received, directly or indirectly, any consideration for the $20,000 in bonds delivered to the Schneeloch Company, which are in controversy. The district, through the efforts of the company, as we understand, obtained an offer of 82 cents on the dollar for the remainder of the bonds, conditioned among other things that the State of Oregon would guarantee interest on the bonds for five years; but no sale was made or authorized for such figure by the state irrigation commission.

■ Section 7332, Or. L., requiring that "claims against the district shall be submitted to the board upon vouchers," etc. This law is mandatory. Every claim that the Schneeloch Company submitted to the board was paid in full. No claim was ever submitted to the board for the "services rendered" and "sums so expended" mentioned in said release and in the district's and directors' joint answer herein.

■ It is admitted by the defendant Ralph Schneelock Company that it received the bonds in question and that it has disposed of them. The option agreement and the release thereof were illegal and in violation of the plain provisions of the statute. It follows that the obtaining of the bonds by the company was wrongful and the acceptance and disposition of such bonds was a conversion thereof.

■ It is submitted upon the part of plaintiff, that they are entitled to recover as damages to the district, the amount of the face value of the bonds taken. On behalf of defendant company, it is claimed that the measure of damages, if any, was the market value for the bonds at the time of the alleged conversion. It is shown by plaintiffs that the irrigation district is solvent and financially responsible for the ultimate payment of the bonds; that there is in the district 134,000 acres of land of the approximate value of $5,600,000 which would be increased by the construction of irrigation works, subject to the payment of bonds issued by the district. That the indebtedness of the district consists of only about $95,000.

It appears to have been the position of the parties at the time of the trial of the case that the bonds were valid and a binding obligation of the district. Two lots of bonds aggregating $70,000 par value have been sold by the district for 90 per cent of the face value and in the attempted contract between the district and the company there was an option for the district to pay him $18,000 or deliver bonds of the par value of $20,000.

■ It is generally stated in reference to commercial paper that the value of the paper is in a large measure dependent upon the solvency of the maker. In a suit for the conversion of ordinary commercial paper, such as a negotiable note, or bond, it is almost universally held that the loss is *prima facie* the amount of the note or bond converted. Evidence, however, is allowed to reduce the loss to less than the face value of such negotiable paper. If the defendant was not satisfied with the figures given in regard to the face value and the sale price of the

bonds in question, and desired to avail itself of such defense, it was incumbent upon the defendant company to make such showing: *American Surety Co.* v. *Hill County* (Tex. Civ. App.), 254 S. W. 241; affirmed (Tex. Com. App.), 267 S. W. 265.

The Texas case is upon principle upon all-fours with the case at bar. It involved the sale of bonds of road districts, at a price less than allowed by the statute and was an action for the conversion of such bonds. The statute of that state, however, did not permit the sale of the bonds at less than their par value. We notice in that case, in regard to the commissioners' court, which permitted the sale of the bonds in violation of the statute by the defendants, American Surety Company and Mr. Bibb, acting for his firm, Bibb & Hughes, who were contractors, it was held that the commissioners' court could not delegate such duties to anyone else. So in this case, the directors of the district could not delegate or make an arrangement with the Ralph Schneeloch Company for, or consummate a sale of, the bonds in question for less than 90 per cent of their par value. The sale of the bonds was a duty devolving upon the directors and was a nondelegable duty.

The Ralph Schneeloch Company was presumed to know, and no doubt did know, that the statute inhibited the directors from disposing of the bonds of the district, except for 90 per cent on the dollar, without the consent of the state irrigation commission, which was not obtained.

In that case we find a quotation from *Milliken* v. *Callahan County*, 69 Tex. 205 (6 S. W. 681), which was a suit for damages by a county for conversion of bonds issued by the county, reading as follows:

"There was no necessity to prove the value of the bonds. The county was bound for their par value and that was the amount of damage suffered by it in consequence of their being in circulation."

The measure of damages was fixed in that case, as we understand, at the par value of the bonds for the reason that the statutory requirement was that the bonds could not be sold for less. When Schneeloch Company took over the $20,000 in bonds of the district it became responsible to the district for the amount of 90 per cent of their face value, the lowest amount the statute permitted such bonds to be sold, and that plus accrued interest on the bonds, is, we think, the true equitable measure of damages in the case at bar. In such cases, compensation appears to be the object to be attained in applying the rule as to the measure of damages. See *Revert* v. *Hesse,* 184 Cal. 295 (193 Pac. 943); *Thompson* v. *Metropolitan Bldg. Co.,* 95 Wash. 546 (164 Pac. 222).

■ There was no demurrer interposed to the last amended complaint. That pleading is one usually designated as "not a model." The bonds in question are therein described, in substance, as in the statement herein and the facts are fully before this court. This is a suit in equity and we think it is not the province of a court of equity to sacrifice substance for form. It would not be fruitful or advantageous to anyone to remand or relegate this suit to the trial court for an amendment of the complaint to conform to the proof.

The irrigation statute has thrown safeguards in favor of investors in irrigation bonds and the investor in such securities is assured that the lands within

a district issuing them are available for the payment of the bonds with interest.

The statute also safeguards the land owners who vote for the issuance of such bonds and guarantees to them that the bonds issued by his district will be disposed of pursuant to the provisions of the law; and no one has a right, either acting as a director, or otherwise, to give such valid district bonds away or to dispose of them, except in the manner provided by the statute.

In the attempted written contract for the release of the so-called option contract, and in the agreement culminating in the transfer of the bonds in question to the company, no consideration for the bonds was mentioned or apparently thought of, except the release of the illegal option contract, and except as to the services claimed to have been rendered as above noted.

██ A technical consideration, much less than 90 per cent of the par value of the bonds, will not suffice to make the contract in question valid under the statute directing the sale of such bonds. Therefore, the claim made and forcefully urged on behalf of the company, that the transfer of the $20,000 of bonds involved was in settlement of a disputed claim and therefore for a sufficient consideration cannot be sustained.

A good deal of argument in this case can be disposed of by the simple statement, that the bonds were regularly issued and are valid obligations of the district. The transfer of the instruments to the company is the only thing that was illegal. It does not render the bonds invalid or unenforceable in the hands of an innocent purchaser for value without

notice. The bonds are probably in the possession of such person at the present time.

The two directors named and the Jefferson Water Conservancy District were made parties defendant in this suit and we think properly so. The initiatory pleading, to which we have referred, prays judgment against "defendants." It certainly is not desired that a decree be rendered against the district. Whether or not one was contemplated against the directors by the complaint, we are in doubt. There is no allegation of fraud or conspiracy against the two directors. It is not claimed or suggested that they received a cent of benefit from the transaction. Naturally, perhaps, they wish their action to be confirmed, and as defendants they are linked with the company, to a certain extent. At the inception of the controversy no demand was made upon the directors, except that some action be taken by them against the company.

The other director is not brought in. What part he took in the affair, if any, is not clearly shown. Briefly, we do not think that the demands of equity require further consideration or any decree as to them, except that the decree of the lower court in favor of the defendants Gard and Henderson should be and is affirmed, without any costs to them.

The decree of the trial court as to the defendant Ralph Schneeloch Company is reversed and one directed to be entered against it for the sum of $18,000, together with interest on the face amount of the $20,000 bonds from the date of the bonds, June 1, 1922, to the date of entry of the mandate herein in the Circuit Court, at the rate of 6 per cent per annum, and for plaintiffs' costs and disbursements in favor of

plaintiffs for the use and benefit of, and to be paid to Jefferson Water Conservancy District.

AFFIRMED AS TO DEFENDANTS GARD AND HENDERSON. REVERSED AS TO RALPH SCHNEELOCH Co. REHEARING DENIED.

COSHOW, C. J., and BROWN and BELT, JJ., concur.