McDERMOTT *v.* ALGER.

1. MANDAMUS—LACHES—UNREASONABLE DELAY.

An application for mandamus which is unduly delayed may, in the exercise of the discretion of the court, be denied if the result of issuing the writ would be to prejudice third persons who have acted in reliance upon the nonaction of the interested parties.

2. LIMITATION OF ACTIONS — MANDAMUS PROCEEDINGS — MUNICIPAL CORPORATIONS—WARRANTS.

Although no statute of limitations in this State applies directly to mandamus proceedings, the court may apply the rule barring such action by analogy upon the ground of laches where the holder of a drain warrant took no action within the statutory period for commencement of suit and permitted the matter to rest from 1894 to 1911.

3. SAME—TAXATION—TIME — COMMENCEMENT — STATUTE OF LIMITATIONS.

If the holder of the warrant has no remedy which he may pursue, the statute of limitations does not begin to run against a quasi municipal corporation, until a fund has been provided from which the warrant may be paid. In case the holder has any remedy the statute commences to run from the date of issuance. Plaintiff would not be justified in delaying commencement of some legal action unless no funds were actually on hand, or no means of raising money existed.

4. MUNICIPAL CORPORATIONS—TOWNSHIPS—TAXATION—WARRANTS.

Where a drain warrant was issued for the construction of a drain by a township in which it was located, and some of the landowners voluntarily paid the tax and others contested, and the court set aside the contestants' portion of the assessment, it was the duty of the township officials to reassess the same unless the ground for setting aside the assessment was jurisdictional: if they refused to discharge the duty it could have been required by mandamus proceedings. If the drain had been completed and no provision for paying the warrants had been legally

made, the commissioners were required by law to reassess the cost upon application of any interested parties. Hence, relator had a remedy to enforce his rights if he saw fit to apply for it. 2 Comp. Laws, §§ 4366, 4369 (2 How. Stat. [2d Ed.] §§ 3423, 3426).

5. MANDAMUS—LACHES.

Where the holder of a drain warrant neglected for nearly fifteen years to take any action for the protection of his rights, and he might during that period have commenced proceedings against the drain commissioner by mandamus to require the reassessment of the tax which had been in part determined invalid, he was barred by his laches from maintaining the proceedings.

Certiorari to Saginaw; Gage, J. Submitted April 6, 1915. (Calendar No. 25,540.) Decided June 7, 1915.

Mandamus by James W. McDermott against Leonard Alger, drain commissioner of the county of Saginaw, to compel the respondent to reassess a drain tax. From an order denying the writ relator brings certiorari. Affirmed.

*William M. Smith,* for appellant.

*Bird J. Vincent,* Prosecuting Attorney, for appellee.

BIRD, J. The relator petitioned the circuit court for the county of Saginaw, for a writ of mandamus, to compel the respondent to reassess a portion of the costs of the construction of a certain drain located in that county. Upon the hearing of the matter, the court refused to issue the writ, principally because of the laches of relator in making the application. The proceedings are here for review upon certiorari.

It appears from the record that, in the year 1894, a certain drain was laid out in Saginaw county, and named Wolf Creek Drain. Later it was constructed, and orders in the sum of $6,626.19 were issued to

cover the cost thereof. Some of the landowners in the assessment district voluntarily paid their taxes; others permitted their taxes to be returned, and afterward contested their validity on the hearing of the auditor general's petition in the fall of 1896, and taxes to the extent of $2,752.42 were set aside. The precise ground upon which they were set aside does not appear in the record. Relator purchased his drain orders in the year 1894, and when this proceeding was launched in July, 1911, there was due thereon $655.82. Some small amounts were paid on his orders during the intervening years. In July, 1911, the relator made a demand upon the respondent that he reassess the deficiency upon the original assessment district. This he refused to do, and by reason thereof these proceedings were instituted.

The trial court, in reaching the conclusion which he did, recognized the following general rule applicable in mandamus cases:

"The court may, in the exercise of its discretion, deny an application for mandamus made after an unreasonable delay, especially where the delay has resulted prejudicially to the rights of the respondents or others interested. The applicant may, of course, avoid the effect of this rule by showing good excuse for the delay. In States wherein the statutes of limitation do not apply directly to mandamus proceedings, it is common to apply them by analogy; and, while it is difficult to lay down any fixed rule as to the time when the writ will be barred, it may be said in a general way that it must be brought within the period fixed for that particular form of civil action or proceeding, which may be brought to enforce the right which is the subject of the writ." 26 Cyc. p. 393.

In this State there is no statute of limitations directly applicable to mandamus proceedings. Therefore, if such application is to be made, it must be applied by analogy. The question as to whether

relator's orders would be barred by the statute in a civil case is one to which much attention is given by counsel in their briefs. The relator insists upon the rule, namely:

"That the statute of limitations does not begin to run against a warrant issued by a municipal, or quasi municipal, corporation, and payable out of a particular fund, until the corporation is provided a fund from which it may be paid."

And he seeks to bring these orders within that general rule by showing that this particular drain fund has never had money out of which these orders could be paid. On the other hand, the respondent recognizes this rule, but contends that an exception thereto is applicable in this case. The exception referred to, in substance, is that where the warrant is payable out of a special fund, and the holder thereof has a remedy which he may pursue, the statute of limitation commences to run as soon as the warrant is issued.

The idea upon which the rule and the exception thereto appear to rest is that, when the holder of the warrant has no remedy which he may pursue, the statute does not begin to run until the fund is provided with money with which to pay it. *Wetmore* v. *Monona County,* 73 Iowa, 88 (34 N. W. 751) ; *Barnes* v. *Turner,* 14 Okl. 284 (78 Pac. 108, 10 L. R. A. [N. S.] 478, 2 Am. & Eng. Ann. Cas. 391) ; *Potter* v. *City of New Whatcom,* 20 Wash. 589 (56 Pac. 394, 72 Am. St. Rep. 135) ; *Frazer* v. *County Court,* 135 Mo. 533 (37 S. W. 521) ; *King Iron Bridge, etc., Co.* v. *Otoe County,* 124 U. S. 459 (8 Sup. Ct. 582) ; *State* v. *Board of County Com'rs,* 23 Nev. 262 (45 Pac. 982) ; 25 Cyc. p. 1068. But if the holder of the warrant has a remedy, the statute commences to run upon the issuance of the warrant. *Bodman* v. *Johnson County,* 115 Iowa, 296 (88 N. W. 331) ; *Mills County, etc., Bank* v. *Mills County,* 67 Iowa, 697 (25 N. W.

884). This exception appears to be recognized in *Barnes* v. *Turner, supra.*

In distinguishing *Bodman* v. *Johnson County, supra,* from *Wetmore* v. *Monona County, supra,* the Iowa court said:

"We think the distinction between the cases is that in the latter the county had no means of raising the fund out of which the warrant could be satisfied, and therefore was not in default in payment until there was money on hand, while in the case of the ditch fund there is authority for making additional assessments until the expenses payable out of the fund are satisfied. (See Code, § 1950.) Therefore it was the duty of the county to raise the necessary funds, and plaintiff was not justified in postponing the bringing of his action until such funds were actually on hand."

In the instant case, when a portion of the tax was set aside by the court, if for other than jurisdictional grounds, it was the duty of the township officers, upon their own initiative, to cause the same to be corrected and to be reassessed. 2 Comp. Laws, § 4369 (2 How. Stat. [2d Ed.] § 3426). And if the drain had been completed and payment or provision for payment had not been legally made, it was the duty of the commissioners to reassess the cost thereof upon application of any of the parties interested. 2 Comp. Laws, § 4366 (2 How. Stat. [2d Ed.] § 3423). And, had the township officers refused to discharge this duty under either statute, it could have been enforced by mandamus. *Laubach* v. *O'Meara,* 107 Mich. 29, (64 N. W. 865). It therefore follows that relator was in a position during the whole period to enforce his rights if he had seen fit to do so.

It seems to us that there is much reason in the exception to the rule, and that the facts in this case are such that it is especially fitting that the exception to the rule should be applied. Relator purchased these orders in 1894, and has been ever since demand-

ing payment thereof. Just why he was so patient about the matter was due to the fact, says counsel, that he was each year receiving a small payment thereon from the county treasurer as delinquent taxes were paid, and this led him to believe that his orders would be eventually paid. The trouble with this attempt to excuse his laches is the fact that nearly half of the tax was set aside in the Saginaw circuit court in the fall of 1896. When that decree became final, he then knew that there would be such a deficiency in the fund that his orders could not be paid. After being possessed of this knowledge, why he did not bestir himself for 15 years to protect his rights is not easily explained. Counsel says, however, had he brought mandamus proceedings at any time during that period against the county treasurer, the writ would have been denied because the treasurer would have shown that there was no money in the fund. This would probably have been the result had he proceeded against the treasurer (*Cathcart* v. *Merritt Township,* 38 Mich. 243), but that does not answer the query why he did not then institute the same proceeding which he did in July, 1911. No reason is assigned why he could not have instituted this proceeding against the drain commissioner in 1896 as well as when he did. If he had, no question of this kind could have arisen. Instead of doing then what he has now done, he waits 15 years, and during that time portions of the Wolf Creek Drain have been attached to other drains, and presumably titles have changed hands, and will be subjected to liens, if this writ is granted, which they had no notice of when they purchased them. But it is argued that this ditch was constructed and the lands within the assessment district were benefited thereby, and ought now to bear the burden of it. If relator had been ordinarily diligent, the orders would have been paid years ago. It

is not in the interest of the public good to enforce such ancient claims after so many years have elapsed, and after so many complications have arisen, unless some very good reason is given for the delay.

We think the trial court was right in its conclusion, and the order denying the writ will be affirmed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.