Argued September 20; reversed October 24; rehearing denied
December 12, 1944

# BUELL *v.* COUNTY COURT OF JEFFERSON COUNTY ET AL.

(152 P. (2d) 578, 154 P. (2d) 188)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

H. H. *DeArmond,* of Bend (DeArmond & Goodrich, of Bend, and Boyd Overhulse, of Madras, on the brief), for appellants.

*Cedric Miller,* of Vancouver, Wash., and *Orville T. Boyle,* of Portland, for respondent.

BAILEY, C. J.   This proceeding was brought by the plaintiff, W. E. Buell, against the county court of Jefferson county, Oregon, and the individual members thereof, for a peremptory writ of mandamus requiring that court to make an assessment and levy on the property within the Suttles Lake irrigation district sufficient to pay the principal of, and interest on, bonds and warrants issued by that district and owned by the plaintiff.   From a judgment granting and directing a peremptory writ the defendants have appealed.

The question here presented is whether the statute of limitation is a bar to the relief sought by the plaintiff, and, if not, whether relief should be denied because of delay in instituting this proceeding.

There is no dispute as to the facts.   Suttles Lake irrigation district was organized in April, 1915, and contained approximately 35,000 acres of arid land in Jefferson county.   The purpose of its organization was to build and develop an irrigation system serving that acreage.   Bonds in the sum of $750,000 were authorized by the district and thereafter, for preliminary investigation, bonds in the sum of $7,100 were issued and sold, of which amount the district

has redeemed a total of $4,000. Of those outstanding the plaintiff owns bonds in the sum of $1,400, dated January 1, 1917, with maturity date of 1928 and with interest payable semiannually at the rate of six per cent per annum, represented by interest coupons. No payments have been made of principal or interest on the bonds owned by the plaintiff.

To defray expenses of the district, warrants have been issued totaling in excess of $28,000, of which amount the district has paid over $21,000. The plaintiff is the owner of such warrants to the amount of $4,561.59, of which a total of $4,227.27 is dated 1924, and the most recent warrant is dated April 11, 1927. Immediately upon their issuance the warrants were presented to the county treasurer for payment, which was refused for want of funds. Notation to that effect was made on each such warrant by the county treasurer and all were registered by him. The validity of the bonds and warrants is not questioned.

The board of directors of the irrigation district, beginning in 1919 and continuing through 1927, every year caused an assessment and levy to be made ''for the purpose of paying the expenses of the district, and for all other purposes, including redemption of bonds, and . . . the total of said assessments'' exceeded ''the amount of bonds and warrants issued by the district.'' The assessments were certified to the county assessor of Jefferson county and were placed by him on the assessment rolls of that county. A considerable part of the amount levied has not been paid and is delinquent.

During the period when those assessments and levies were made, practically all the lands within the district were in private ownership. However, during

those years there were numerous changes of owners and changes in the personnel of the board of directors of the district. On November 5, 1941, when this proceeding was instituted, 13,342 acres of the land were privately owned; 400 acres were owned by the state highway commission; 3,595 acres by Jefferson county; and 10,720 acres were owned by the United States resettlement administration, in addition to 7,120 acres classed as "public lands."

At present the district does not have sufficient funds to retire any of the plaintiff's warrants or bonds. Moreover, there are other past due and unpaid bonds and warrants of the district outstanding, the principal of which aggregates $3,773.03. Prior to the institution of this proceeding the plaintiff made demand upon the defendant county court, on a date not specified, to make an assessment and levy upon the lands within the boundaries of Suttles Lake Irrigation district sufficient to pay his bonds and warrants with accrued interest.

The duty is imposed upon the board of directors of an irrigation district, to be discharged each year on or before the first Tuesday in September, to make a computation of the whole amount of money necessary to be raised by the district "for the ensuing year for any and all purposes whatsoever in carrying out the provisions" of the statute governing such districts, "including estimated delinquencies on assessments": § 125-801, O. C. L. A.; *Noble v. Yancey,* 116 Or. 356, 241 P. 335, 42 A. L. R. 1178; *Kollock v. Barnard,* 116 Or. 694, 242 P. 847. The amount of money necessary to be raised by the district each year when determined by the board constitutes an assessment on all the lands included in the district: § 125-801, *supra.* In the event

that the amount assessed against any tract of land is not paid, the next assessment shall be increased so as to cover that default: § 125-604, O. C. L. A.

After the board of directors has completed its equalization of the assessment it is required to certify the same to the county assessor of the county in which the lands are located; and it thereupon becomes the duty of the county assessor to enter the same on the assessment rolls of the county: § 125-805, O. C. L. A. In case of the neglect or refusal of the board of directors to cause such assessment and levy to be made, that duty devolves upon the county court of the county in which the office of the board of directors is situated, "in the same manner that said court levies county taxes with like effect as the board of directors is required to make the same." For the reason that payments on the assessments and levies made were insufficient to retire the warrants and bonds involved in this litigation, the plaintiff brought this proceeding against the county court and its individual members to compel the making of an additional assessment and levy sufficient to pay his claim against the district.

Claims against an irrigation district are required to be submitted to the board of directors on vouchers, and when approved are paid with warrants of the district. Upon presentation of the warrants to the county treasurer, who is *ex officio* treasurer of the district (§ 125-301, O. C. L. A.), that officer is required to pay the same, "if there be funds available for that purpose, and if there are no funds available, he is required to so endorse the warrants and from the date of such endorsement" the warrants bear interest at the rate of six per cent per annum until paid or until

notice is given that funds are available for the payment thereof: § 125-861, O. C. L. A.

The county treasurer is required to keep a "bond fund" and to pay into such fund the proceeds of assessments and levies made for the purpose of paying the principal and interest on bonds. It is provided also that bonds are "to be retired in numerical order, and not otherwise"; § 125-605, O. C. L. A.

■ In determining the question of whether statutes of limitation apply to mandamus it is necessary to consider the nature of that procedure. While mandamus is classed as a legal remedy in the nature of an action at law *(City of Cascade Locks v. Carlson, 161 Or. 557, 561, 90 P. (2d) 787; Nelson v. Baker, 112 Or. 79, 94, 227 P. 301, 228 P. 916)*, it is an extraordinary remedial process which is awarded not as a matter of right, but in the exercise of a sound judicial discretion and upon equitable principles: *Duncan Townsite Company v. Lane, 245 U. S. 308, 62 L. E. 309, 38 S. Ct. 99; United States ex rel. Arant v. Lane, 249 U. S. 367, 63 L. E. 650, 39 S. Ct. 293; State ex rel. Sondheim v. McClain, 132 Or. 561, 286 P. 590; Board of Education v. Johnston, 189 Okla. 172, 115 P. (2d) 132; 35 Am. Jur., Mandamus, § 312, page 65*.

■ The Oregon legislature in enacting the civil code of procedure in 1862 carefully preserved the distinction between actions at law, suits in equity and what it therein termed "special proceedings": *In re Vinton, 65 Or. 422, 426, 132 P. 1165*. Among the proceedings classed as "special" is mandamus: Laws 1862, chapter 7, page 146 et seq. This distinction has been continued in subsequent compilations of the Oregon statutes: § § 11-101 to and including 11-103, and § § 11-301 to 11-315, inclusive, O. C. L. A. Remedy by special proceedings is

provided in a separate chapter of the code of 1862 (chapter 7, page 146), the detailed requirements of which differ from the pleading and practice prescribed for ordinary actions.

Some of the provisions relating to actions at law, it is true, are specifically made applicable to special proceedings, for example: the designation of parties litigant (§ 11-101, O. C. L. A.), the definition of a motion, an order and a judgment (§ 11-102, O. C. L. A.), and the right of appeal from the circuit court to the supreme court (§ § 11-103 and 11-315, O. C. L. A.). Yet nowhere in the code, so far as we have been able to discover, is there any provision placing mandamus and other special proceedings within the operation of the statute of limitation (§ § 1-201 to and including 1-224, O. C. L. A.) applicable to ordinary actions.

In discussing the subject now under consideration, the court, in *United States ex rel. Arant v. Lane,* supra, observed: "The remedy [mandamus] is provided for in a separate chapter (c. 42) of the code for the District of Columbia with detailed requirements which differ so greatly from the pleading and practice prescribed for ordinary actions that we can not doubt that Congress intended to continue the special character which has been given the proceeding from our early judicial history," citing authorities, "and we can not discover any intention to include it within the general provisions for the limitation of actions."

■ For the reasons hereinabove stated, we conclude that the Oregon statute of limitation does not apply to mandamus: *Nelson v. Baker,* supra.

In a number of jurisdictions, however, it has been held that statutes of limitation do apply to mandamus. Such decisions are generally based on codes of civil

procedure which abolish the distinction between actions at law and suits in equity and classify all civil proceedings as "actions", or codes which especially make statutes of limitation applicable to special proceedings. See, in this connection: *Barnes v. Glide,* 117 Cal. 1, 48 P. 804, 59 Am. St. Rep. 153; *State ex rel. DeKalb v. Ferrell,* 105 Mont. 218, 70 P. (2d) 290; and *State ex rel. Chemical National Bank v. School District No. 9,* 30 Neb. 520, 46 N. W. 613, 27 Am. St. Rep. 420.

■ Although mandamus is not embraced within the limitation prescribed by our code for any ordinary action, it is nevertheless subject to the equitable doctrine of laches: *Nelson v. Baker,* supra; *United States ex rel. Arant v. Lane,* supra; *Duncan Townsite Company v. Lane,* supra; *Duke v. Turner,* 204 U. S. 623, 51 L. E. 652, 27 S. Ct. 316, 9 Ann. Cas. 842; *Board of Education v. Johnston,* supra; Ferris, Extraordinary Legal Remedies, § 228, at page 269. In the instant case the defendants in their answer plead the facts hereinabove stated and aver that the plaintiff is chargeable with laches and should not be permitted to maintain this proceeding.

■ A writ of mandamus, as we have above pointed out, is not awarded as a matter of right, but on equitable principles. An application for the writ should be made seasonably and within a reasonable time after the alleged default or neglect of duty. Delay which has been detrimental or prejudicial to the rights of the defendant or others interested may be sufficient cause for denial of the writ. Every case must be considered on its own particular facts: 35 Am. Jur., Mandamus, § 312, page 65.

In *Paine v. Wells,* 89 Or. 695, 175 P. 430, an original proceeding was brought in this court to compel the

county officers of Morrow county to correct the assess-- ment rolls for the taxes of 1917. This court, in deny- ing affirmative relief, stated:

"* * * Laches is a bar to mandamus, and a petitioner desiring to avail himself of the benefits of such a writ must act promptly: Eastern Chero- kees, 220 U. S. 83-87 (55 L. Ed. 379, 31 Sup. Ct. Rep. 373). It is well settled that application for a writ of mandamus must be made within a reasonable time after the alleged default or neglect of duty, and that laches or delay in making an application unless satisfactorily explained may afford sufficient cause for its denial, particularly when the delay has been prejudicial to the rights of the respondent: 18 R. C. L., § 286, p. 335; Alleghany County Board of Commrs. v. County Commrs., 20 Md. 449, 460."

■■ The petition herein for an alternative writ was filed on November 5, 1941. No reason is set forth in the alternative writ for the plaintiff's not having instituted the proceeding at an earlier date. The last assessment made by the board of directors for any purpose was in 1927. The most recent date of issu- ance of any warrant held by the plaintiff was April 11, 1927. All the warrants were general obligations of the district, payable out of its general funds. Action could have been instituted immediately after the issu- ance of the warrants to reduce to judgment the claim or claims represented by them: *Goldsmith v. Baker City,* 31 Or. 249, 49 P. 973. The bonds likewise were general obligations of the district and were payable on a certain date, to-wit, January 1, 1928.

Upon the failure of the board of directors to make an assessment in 1928 sufficient to pay the principal of and interest on the bonds and warrants held by him, the plaintiff could have instituted this proceeding with-

out delay. Instead of doing so, he waited thirteen years, and during that time more than half of the lands in the district have passed into the ownership of the United States. Jefferson county has acquired 3,595 acres and the state highway commission on behalf of the state of Oregon has taken title to 400 acres.

In *McDermott v. Alger*, 186 Mich. 278, 152 N. W. 991, the relator petitioned the circuit court for a writ of mandamus to compel the drain commissioner to reassess a part of the cost of construction of a certain drain. That court denied the writ and its order was affirmed on appeal. In passing upon the question there involved, the supreme court stated:

"* * * Relator purchased these orders [warrants] in 1894, and has been ever since demanding payment thereof. Just why he was so patient about the matter was due to the fact, says counsel, that he was each year receiving a small payment thereon from the county treasurer as delinquent taxes were paid, and this led him to believe that his orders would be eventually paid. The trouble with this attempt to excuse his laches is the fact that nearly half of the tax was set aside in the Saginaw circuit court in the fall of 1896. When that decree became final, he then knew that there would be such a deficiency in the fund that his orders could not be paid. After being possessed of this knowledge, why he did not bestir himself for 15 years to protect his rights is not easily explained. Counsel says, however, had he brought mandamus proceedings at any time during that period against the county treasurer, the writ would have been denied because the treasurer would have shown that there was no money in the fund. This would probably have been the result had he proceeded against the treasurer (Cathcart v. Merritt, Tp., 38 Mich. 243), but that does not answer the query

why he did not then institute the same proceeding which he did in July, 1911. No reason is assigned why he could not have instituted this proceeding against the drain commissioner in 1896 as well as when he did. If he had, no question of this kind could have arisen. Instead of doing then what he has now done, he waits 15 years, and during that time portions of the Wolf Creek Drain have been attached to other drains, and presumably titles have changed hands, and will be subjected to liens, if this writ is granted, which they had no notice of when they purchased them. But it is argued that this ditch was constructed and the lands within the assessment district were benefited thereby, and ought now to bear the burden of it. If relator had been ordinarily diligent, the orders would have been paid years ago. It is not in the interest of the public good to enforce such ancient claims after so many years have elapsed, and after so many complications have arisen, unless some very good reason is given for the delay."

*Board of Education v. Johnston,* supra, was a mandamus proceeding to require the board of education of the city of Duncan, Oklahoma, to include in its estimate for the fiscal years of 1937, 1938 and 1939 tax levies to pay delinquent installments and interest on paving bonds for the fiscal years 1924 to 1926, inclusive. The improvement bonds involved in that proceeding were issued in 1922 and were payable in ten equal annual installments. The board of education in its answer to the alternative writ challenged the sufficiency of the writ, on the ground of delay. After pointing out that mandamus proceedings were not embraced within the limitations provided for actions at law, the supreme court held that such proceedings were subject to the equitable doctrine of laches. It

reversed the judgment of the trial court awarding the writ, and stated:

"The owner of public improvement bonds ought not be permitted to rest indefinitely secure with interest-bearing burdens upon a municipality, for that would be detrimental if not destructive to the ownership of property liable for the debt. Such a property owner or prospective property owner should be entitled to have liability of particular property determined and discharged from the, lien of principle [principal] and interest and the burden of penalty as soon as practicable.

"In the case at bar all real property taxpayers of the school district, by the judgment rendered, are compelled to pay thrice the amount of the original cost had it been assessed in due course of law; whereas without the tax levy being made, they could not have determined their just share of the expense of the improvement and paid it as could individual owners of property improved. Herein the equitable doctrine of laches applies."

It is contended by the plaintiff that lands within the irrigation district owned by the state or the United States are subject to assessment to pay the debts of the district as are lands in private ownership. In support of that assertion, he directs attention to § 125-805, O. C. L. A., which in so far as material to this discussion reads as follows:

" * * * Any land, the title to which may now or hereafter be vested in the state, including lands segregated under the Carey act or state lands sold under contract, in any irrigation district, shall be subject to taxation by the district, and the full amount of assessments due against said lands shall be paid to the district before the same is sold, resold or contract for sale executed. And the public lands of the United States within said dis-

trict, whether entered or unentered, shall be subject to taxation under the aforesaid act of Congress of August 11, 1916.''

The excerpt quoted was a part of § 27, chapter 357, Oregon Laws 1917. The federal enactment (39 Stat. 506-509) therein referred to has been codified as §§ 621 to 630, inclusive, 43 U. S. C. A. The only part of the act here pertinent is the following, which we quote from § 621:

''When in any state of the United States under the irrigation district laws of said state there has, prior to August 11, 1916, been organized and created or shall thereafter be organized and created any irrigation district for the purpose of irrigating the lands situated within said irrigation district, and in which irrigation district so created or to be created there shall be included any of the public lands of the United States, such public lands so situated in said irrigation district, *when subject to entry, and entered lands within said irrigation district, for which no final certificates have been issued,* which may be designated by the Secretary of the Interior in the approval by him of the map and plat of an irrigation district as provided in section 623 of this chapter, are hereby made and declared to be subject to all the provisions of the laws of the state in which such lands shall be situated relating to the organization, government, and regulation of irrigation districts for the reclamation and irrigation of arid lands for agricultural purposes, to the same extent and in the same manner in which the lands of a like character held under private ownership are or may be subject to said laws.''
[Italics supplied.]

■ Lands in Suttles Lake irrigation district which are designated as ''public'' or which are owned by the United States resettlement administration are not pub-

lic lands subject to entry, and therefore do not fall within the provisions of the Oregon statute quoted or the act of Congress therein mentioned. The question of whether lands within the district, owned by the United States, could be assessed for the debts of the district was not involved in *Noble v. Yancey,* supra, *Kollock v. Barnard,* supra, or *State ex rel. Sondheim v. McClain,* supra.

The allowance of the writ at this time would in practical effect impose upon the lands in private ownership in the district the entire burden of the assessment. In our opinion, this proceeding was not seasonably brought, and the delay has been detrimental and prejudicial to the rights of private owners of lands in the irrigation district. The judgment appealed from is therefore reversed and the cause is remanded to the circuit court with instruction to enter judgment for the defendants.

Petition for rehearing denied December 12, 1944

ON PETITION FOR REHEARING

(154 P. (2d) 188)

BAILEY, C. J. In a petition for rehearing, the respondent, W. E. Buell, asserts that the opinion rendered herein fails to follow our former decisions without expressly overruling them, "and as a result the whole matter of enforcing collection of defaulting municipal securities is left in a chaotic condition."

■ The one case which he cites as so overruled is *J. H. Tillman Co. v. City of Seaside,* 145 Or. 239, 25 P. (2d) 917. That was an action brought by the owner of warrants against the city of Seaside to recover damages alleged to have been sustained by reason of the failure of the city to levy and collect special assessments. We therein held that the action was not

barred by the statute of limitation, inasmuch as the warrants "were payable out of a special fund and the money had not yet been provided by the city of Seaside with which to pay them."

In that case the warrants involved were not a general obligation of the city of Seaside. The duty to pay them was dependent upon the happening of a future event, to wit, the levy and collection of assessments on the particular properties benefited by a certain local improvement. In the instant case, however, the warrants and bonds were a general obligation of the district. The bonds and the interest coupons thereto attached were payable on dates certain. The warrants were due and payable immediately upon their issuance and delivery. The maturity of neither bonds nor warrants was dependent upon the happening of any future event. Furthermore, no question of laches was involved in the case cited in the petition for rehearing. We do not consider the decision herein inconsistent with that in the Tillman case. Not only are the facts different in the two cases, but also the nature of the proceedings.

It is further argued in the petition that we did not give proper weight to the findings of the trial court. There were no findings of that court, either general or special. All the facts in the case were stipulated, and on the stipulation as a basis the court decreed that a peremptory writ of mandamus be issued. Our opinion was, and we adhere to it, that the court's conclusion was not supported by the facts.

The other matters mentioned in the petition were heretofore considered, in reaching our decision. We see no reason for granting this petition, and it is therefore denied.