# BROWN et al
*Respondents,*
*v.*
# DEARBORN,
*Appellant.*

(No. 117303, CA 17910)

628 P2d 405

Jeannette M. Launer, Assistant City Attorney, Salem,
argued the cause for appellant. With her on the brief was
William J. Juza, City Attorney, Salem.

James J. Susee, Salem, argued the cause and filed the brief for respondents.

Before Joseph, Chief Judge, and Thornton and Van Hoomissen, Judges.

JOSEPH, C. J.

## JOSEPH, C. J.

Plaintiffs sought a peremptory writ of mandamus to compel defendant, the Personnel Director of the City of Salem, either to apply "veteran's preference points" to their scores on a civil service promotional exam or to deduct such points from the other candidates' scores to which they had been added. An alternative writ issued. After a hearing on the return to the writ, the trial court issued a peremptory writ ordering defendant to apply the points to plaintiffs' scores.

The facts are not in dispute. Plaintiffs are corporals in the city's Police Department. Each took an examination for promotion to sergeant. Each successfully completed the examination and was assigned a position on the eligibility list as of October 4, 1979. All of the plaintiffs are veterans, but none was allowed the application of veteran's preference points in ranking their scores on the eligibility list. Other veteran candidates were allowed those points. If the preference points had been added to their examination scores, each of them would rank higher on the list than some of the other candidates who received the benefit of the points and each would be more likely to be promoted.

Plaintiffs were all hired in 1972 or earlier. Each was accorded preference points on his entrance examination, although none specifically requested the application of the points and none required the points in fact in order to secure appointment as a city police officer. The six other candidates on the eligibility list who were allowed the preference points for promotion were also hired in 1972 or before. None of them had been given preference points on his entrance examination, apparently through clerical error. It was the practice of the city at that time to apply the points automatically to all veterans' entrance examination scores.

The parties agree that the question presented is: Does the law require the application of veteran's preference points to scores on a civil service promotional examination when said preference points have been applied to the entrance examination scores of the same candidate? The answer to that would require only the interpretation and application of ORS 408.230(1) as it existed before the

passage of Oregon Laws 1977, chapter 854, section 3[1] and, possibly, as it now reads after the 1977 amendment[2] and ORS 408.235(2).[3] Apparently the trial judge did not view the matter quite the same way, for in his letter opinion he said, in part:

"This has been a most difficult case to decide and it would probably be even more difficult if the Court were limited to strictly legal principles. Obviously, I find it necessary to decide it on equitable principles."

He then made certain "observations or findings,"[4] only one

---

[1] Former ORS 408.230(1) provided:

"Every war veteran who has successfully completed all phases of a civil service entrance test shall be allowed preference on the list established as a result of such tests. Preference means that to the score of such war veteran who has passed a test five points shall be added, and if the veteran has a service-connected disability of not less than 10 percent, recognized and certified as such by the United States Veterans Administration, he or she shall be accorded another five points in addition to the passing grade earned in such test. All such points shall be added to the total combined test score of the veteran and shall not be allocated to any single feature or part of the examination. Rating shall be based on a scale of 100 points as the maximum attainable."

[2] ORS 408.230(1) provides:

"Every veteran and disabled veteran who has successfully completed all phases of a civil service test shall be allowed preference on the list established as a result of such test. Preference means that to the score of a veteran who has passed a test five points shall be added, and to the score of a disabled veteran who has passed a test 10 points shall be added. All such points shall be added to the total combined test score of the veteran and shall not allocated to any single feature or part of the examination. Rating shall be based on a scale of 100 points as the maximum attainable."

[3] "(2) Once a veteran has used the preference provided for in ORS 408.230 and has successfully completed trial service and attained regular employe status, he may not use the preference again. Such limitation shall not apply in the case of a disabled veteran."

[4] "(1) But for admitted 'clerical errors', the six officers receiving regular veteran's preference points on the promotional list would have used them on their entrance exams.

"(2) The plaintiffs did not request that their preference points be applied on the entrance exams.

"(3) Each of the plaintiffs were rated so high on the entrance list that they would have been appointed without having used their preference points.

"(4) None of the other top 12 officers on the current promotion list were prejudiced by the plaintiffs having used their preference points upon entrance."

These findings were incorporated in the peremptory writ.

of which seems to relate to a question raised by the statutes[5] and concluded:

> "These findings lead me to the conclusion that the plaintiffs have been damaged by the 'clerical errors' and are now entitled to some relief.

> "The other six officers now claiming preference points are definitely entitled to them, so it would be inequitable to take them away, especially since they are not parties to this proceeding.

> "The only practical remedy, therefore, and the one least burdensome to all concerned, is to restore to plaintiffs their preference points and to adjust the promotional list accordingly."

We deduce from the quoted opinion that the trial judge concluded that the "preference points" ought to have been added to the original *entrance* examination scores of the six officers who later got the benefit of those points on the promotional examination and that *as a matter of equity* these plaintiffs ought to be treated as if they, too, had never before used them. That is equivalent to saying that the law before 1977 required the points to be applied to all veterans' entrance examinations, as they were in fact applied to plaintiffs' scores, but since they were not in the instances of the non-party examinees, the plaintiffs are equitably entitled now to use their points *again.*

If we are correct in our reading of the reasoning process the trial court used, we must reject it. In the first place it is based on a proposition for which there is no authority *(i.e.,* mandamus is an equitable proceeding rather than an extraordinary remedy); and in the second place it creates a new and different duty to act as a substitute for the legal duty it impliedly finds was violated. The parties did not directly raise the issue of the applicability of equitable principles to this case in their briefs, but on oral argument we asked for supplemental authorities on the point. Those authorities, on our analysis, show quite clearly the trial court's error.

The leading case is *Buell v. Jefferson County Court,* 175 Or 402, 152 P2d 578, 154 P2d 188 (1944). The officials

---

[5] I.e., the second one.

of an irrigation district had ceased after 1927 to levy and collect annual assessments required by a law. In 1941 a mandamus proceeding was initiated by bond holders to enforce the legal duty. A statute of limitation defense was tendered, but the trial court refused it and ordered the assessments to be made and collected. On appeal the Supreme Court said that a "special proceeding" like mandamus is not subject to the statutes of limitations, but it went on:

"In determining the question of whether statutes of limitation apply to mandamus it is necessary to consider the nature of that procedure. While mandamus is classed as a legal remedy in the nature of an action at law * * *, it is an extraordinary remedial process which is awarded not as a matter of right, but in the exercise of a sound judicial discretion and upon equitable principles: * * *." 175 Or at 408.

"Although mandamus is not embraced within the limitation prescribed by our code for any ordinary action, it is nevertheless subject to the equitable doctrine of laches: * * * In the instant case the defendants in their answer plead the facts herein above stated and aver that the plaintiff is chargeable with laches and should not be permitted to maintain this proceeding.

"A writ of mandamus, as we have above pointed out, is not awarded as a matter of right, but on equitable principles. An application for the writ should be made seasonably and within a reasonable time after the alleged default or neglect of duty. Delay which has been detrimental or prejudicial to the rights of the defendant or others interested may be sufficient cause for denial of the writ. Every case must be considered on its own particular facts: * * *." 175 Or at 410.

*Buell* has since been cited for disparate propositions. In *Lee v. Brown,* 264 Or 341, 505 P2d 924 (1973), it was used to support this proposition:

"Mandamus is an extraordinary remedy at law to which the rules of procedure relating to actions at law are applicable."

Justice Rossman, specially concurring in *Lafferty v. Newbry,* 200 Or 685, 702, 268 P2d 589 (1954), cited it for what it actually said:

"Mandamus is an extraordinary remedial process which is awarded, not as a matter of right, but in the

exercise of a sound judicial discretion, and upon equitable principles."

He continued, however:

"A relator is not entitled to mandamus unless he has a clear legal right to the performance of a particular duty sought to be enforced and unless the defendant has a clear legal duty to do the thing he is called upon to do. ***"[6]

*Buell* by no means turned the special proceeding of mandamus into an equitable proceeding. What it did was to establish that once the petitioner has established the legal duty asserted, then the question of *whether* to order the performance of that duty is in the court's discretion, in the exercise of which the court may apply equitable principles, particularly the doctrine of laches.

The problem in this case is that the trial judge never clearly decided the existence, *vel non,* of a legal duty or what that legal duty was. Instead he concluded that the duty itself was an equitable one and then molded a remedy. That is not the way the proceeding works in Oregon.

Moreover, assuming that the legal duty underlying the equities of the situation was to apply the "preference points" to the entrance examination scores of the officers who are not parties here, *Buell* cuts exactly the opposite direction. The plaintiffs assert that the preference points should not have been applied to their entrance examinations, all of which were taken before 1977. If that application was not lawful, it should have been corrected then. Instead plaintiffs waited until a promotional examination came up in 1979 and then asked either that they be given the points again—or that the non-party officers have the preference points taken away from their scores on the promotional exam. That seems to call for the application of *Buell's* laches doctrine, for by waiting to assert their pre-1977 legal right they would cause others to be prejudiced, and that would be grounds for denying the writ. *See Emerson v. Deschutes Cty. Bd. of Comm'rs, supra* n 6.[7]

---

[6] *See also State ex rel Venn v. Reid,* 207 Or 617, 631, 298 P2d 990 (1956); *Nielsen v. Wilson,* 13 Or App 306, 310, 509 P2d 867 (1973); *Emerson v. Deschutes Cty. Bd. of Comm'rs,* 46 Or App 247, 249, 610 P2d 1259 (1980).

[7] In his opinion and in the peremptory writ of mandamus the trial court said:

Plaintiffs make no claim except that their preference points should not have been applied to their entrance examinations without their express request. Until they had established a clear legal right to performance of the duty sought to be enforced, *State ex rel v. Dobson,* 171 Or 492, 498, 135 P2d 794, 137 P2d 825 (1943); *State ex rel Watson v. Rader,* 36 Or App 847, 855, 585 P2d 759 (1978), there was, under *Buell,* no occasion to reach the problem of how equitable principles would be applied (even assuming in the absence of any authority that the *form* of the remedy to be afforded, rather than the issuance or not of the peremptory writ, was an equity question). Referring back to the letter opinion, *supra,* at 2, it is fairly apparent that the trial judge found, at least by implication, that petitioners did *not* establish a clear legal right to the performance of a duty by the defendant.

The trial court ought then to have quashed the alternative writ and denied the peremptory writ. Instead he found a duty arising out of equitable considerations. That puts the case in an unusual posture, because the party resisting the writ and who prevailed on the controlling legal question *(i.e.,* Was there a legal duty in favor of plaintiffs?) lost the case and was forced to appeal. We believe, therefore, that even on this appeal the burden remains on the plaintiffs to establish, independent of the trial court's equitable considerations, that, *as of the time each of the plaintiffs took an entrance examination,* they were entitled to exercise a choice whether to use the preference points or not. That is a pure question of law. *See State ex rel Maizels v. Juba,* 254 Or 323, 330, 460 P2d 850 (1969).

Plaintiffs argue that "shall be allowed" in ORS 408.230(1) has to be read as if the words were "shall be allowed upon request." Standing by itself that reading

---

"None of the other top 12 officers on the current promotion list were prejudiced by the plaintiffs having used their preference points upon entrance."

It is not very clear what that means, but we take it to mean that at the time of *their* entrance examinations none of the officers who are not now parties to this proceeding and whose names were on the 1979 promotion list were affected in their original employment by the city by the fact that they were not given preference points when preference points were added to the scores of plaintiffs. That does not go to the existence of prejudice *now.*

would not be untenable, but it ignores the rest of the subsection and particularly the words "five points shall be added" in the next sentence. Furthermore, when the entire statutory scheme is examined as it stood in the relevant 1967-1972 period, the thrust is quite the other way. The preference points could then *only* be used on an *entrance* examination. ORS 408.220 provided:

> "In every department and upon all public work of this state, and of any county, city, municipal corporation or other political subdivision thereof, war veterans shall be preferred for appointment and employment if the veteran possesses a business capacity necessary to discharge the duties of the position."

The way that policy was to be carried out was phrased as a mandate in ORS 408.230(1). Given the situation when the plaintiffs and the non-party officers took the entrance examinations, it seems that application of the points then was the only benefit that could have been enjoyed from veteran status. It also seems that only the veterans who did *not* have the points applied could then have been damaged by the "clerical error."

In the light of subsequent legislative action, the personnel director's actions might appear to have been discriminatory or otherwise illegal. The legislature chose in 1977 to extend the veteran's preference device to promotional examinations, and it would now be to plaintiffs' advantage not to have had their preference points applied to their entrance examination scores. However, the statute did not then admit of such a choice. The defendant's mistake made before 1977 is damaging to plaintiffs now by hindsight. To compel the correction now would be to give the 1977 extension of the veterans' preference a retroactive application, and the legislative history does not lead to the conclusion that the legislature intended that. *See Joseph v. Lowery,* 261 Or 545, 495 P2d 273 (1972).

Reversed and remanded with instructions to quash the alternative writ of mandamus.